546 A.2d 12

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Joseph Francis DEVERS, Appellee.**

Supreme Court of Pennsylvania.

Argued May 9, 1988.

Decided July 27, 1988.

Richard A. Lewis, Dist. Atty., Katherene E. Holtzinger, Yvonne A. Okonieski, Deputy Dist. Attys., William T. Tully, Harrisburg, for appellant.

Marilyn C. Zilli, James R. Rosato, Frederick W. Ulrich, Asst. Public Defenders, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

In this review, we are afforded an opportunity to clarify the meaning of our landmark decision, *Commonwealth v.*

*Riggins*, 474 Pa. 115, 377 A.2d 140 (1977), and in so doing to clear away the tangled growth of legal misunderstandings which have sprung up around this case. That case firmly established the requirement that a sentencing court must disclose on the record the reasons for the imposition of a particular sentence. We are compelled now to put to rest misconceptions and borderline distinctions which have appeared in our legal literature on the specific issue of the sufficiency of the recorded statement required for sentencing.

The Appellee, Joseph Francis Devers, was involved in a drug related murder and robbery which occurred on May 13, 1983. The victim, Charles Chiloro, Jr. ("Chiloro"), was selling drugs, cocaine and marijuana, at his parents' home in Harrisburg. At the time of the killing, Chiloro's parents were in Florida, but returning soon. Devers went to the house to purchase some cocaine. Thereafter, Chiloro's body was found by his girlfriend. The cause of death was strangulation resulting from an electrical cord as well as the loss of blood. There was a stab wound in Chiloro's back and multiple slash and stab wounds around his body. There was blood all over the house. Drug paraphernalia and marijuana were left in the home, but cocaine and some $11,075 in cash were taken.

Prior to Devers' jury trial, he pled guilty to third degree murder and robbery, and there was no agreement about sentencing. On February 22, 1985, the trial court sentenced Appellee to ten (10) to twenty (20) years for third degree murder and five (5) to ten (10) years for robbery. Appellee complains that the sentencing judge erred by failing to explain in depth why he did not give greater consideration to mitigating circumstances on his behalf. Appellee relies upon *Riggins* to support his complaint.

At the outset it must be noted that the efficacy of the verdicts is not questioned by the Appellee. Only the sentencing procedure has been placed at issue.

Prior to *Riggins*, our common law on the subject of sentencing implied the need for some degree of recorded

explanation.[1] Over a half century ago, in *Commonwealth v. Garramone*, 307 Pa. 507, 161 A. 733 (1932), we created the need in a death case for the court to "file a brief memorandum which will reveal the reasons for the sentence imposed." The principle of having a record was reaffirmed in subsequent cases. *Commonwealth v. Phelps*, 450 Pa. 597, 301 A.2d 678 (1973); *Commonwealth v. Green*, 396 Pa. 137, 151 A.2d 241 (1959); *Commonwealth v. Hawk*, 328 Pa. 417, 196 A. 5 (1938); and *Commonwealth v. Irelan*, 341 Pa. 43, 17 A. 897 (1941). In *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976), a non-capital drug case decided one year before *Riggins,* we found grounds for remand where three judges had agreed on a sentence beforehand, had not requested a pre-sentence report, and had failed to take into account the enumerated balancing factors enunciated in the newly-enacted Sentencing Code, §§ 1321–26.[2] These holdings were derived from two general principles in our jurisprudence: individualized discretionary sentencing and, in *Martin,* the avoidance of excessive punishment.

Under the 1974 Sentencing Code, a defendant could be sentenced alternatively to probation (§ 1322), guilt without further penalty (§ 1323), partial confinement (§ 1324), total confinement (§ 1325), or a fine (§ 1326). Each section included a list of enumerated factors to be "accorded weight" in the selection of that sentence. When these sections were replaced in 1980 by 42 Pa.C.S.A. § 9721(a), which restated the five sentencing alternatives, and § 9721(b), which did away with the enumerated factors in favor of a scoring system, language was retained which still requires a statement on the record of the reasons for the sentence.

The philosophy of indeterminate or individualized sentencing was explicitly recognized by the Pennsylvania Legisla-

1. Compare the dissent of then Justice, now Chief Justice, Nix in *Commonwealth v. Kostka*, 475 Pa. 85, 379 A.2d 884 (1977), that before *Riggins, supra,* there was no such requirement in our law.

2. Act of December 30, 1974, P.L. 1052, No. 345, as amended, 18 Pa.C.S.A. § 1301, et seq., (Supp.1977), now codified at 42 Pa.C.S.A. § 9701 et seq. (1980).

ture early in this century.[3]  Courts are not permitted to mete out punishment based on the mere fact of the crime. On the contrary, sentencing must result both from a consideration of the nature and circumstances of the crime as well as the character of the defendant.  The sentencer has broad discretion to choose a penalty from sentencing alternatives and the range of permissible confinements, provided the choices are consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant.  Discretionary sentencing, in sum, means that a defendant cannot be punished on the basis of the crime alone.

The central problem, of course, remains the definition of standards by which to determine whether a court has followed the process of weighing these factors.  In the pre-*Riggins* line of cases above, it was not the practice to order pre-sentence reports, and on review, appellate courts then gleaned the entire record for evidence that the weighing process had taken place.  In *Martin,* Mr. Justice Roberts (later Chief Justice) wrote for the majority that pre-sentence reports are of enormous value in providing the court with relevant defense information for consideration in sentencing, and called for changes to amend our rules: "We are therefore requesting that the Criminal Procedural Rules Committee prepare a recommendation for the Court amending Rule 1403 to require that, whenever a sentencing court fails to order a pre-sentence report in any of these situations, it shall place in the record its reasons for dispensing with such report."  *Id.,* 466 Pa. at 135, 351 A.2d 650.  We note at this point that the *present* Pa.R.Crim.P. 1403 continues to provide that:

**Rule 1403.   Aids in Imposing Sentence**

**A.   Pre-sentence Investigation Report.**

(1) The sentencing judge may, in his discretion, order a pre-sentence investigation report in any case.

**3.**   The Act of June 19, 1911, P.L. 1055, § 6, as amended, 19 P.S. § 1057 (1964).

(2) The sentencing judge shall place on the record his reasons for dispensing with the pre-sentence investigation report if the court fails to order a pre-sentence report in any of the following instances:

(a) where incarceration for one year or more is a possible disposition under the applicable sentencing statutes; or

(b) where the defendant is less than twenty-one years old at the time of conviction or entry of a plea of guilty; or

(c) where a defendant is a first offender in that he has not heretofore been sentenced as an adult.

(3) The pre-sentence investigation report shall include information regarding the circumstances of the offense and the character of the defendant sufficient to assist the court in determining sentence.

**B.  Psychiatric or Diagnostic Examination.**

After a finding of guilt and before the imposition of sentence, and after notice to counsel for both parties, the sentencing judge may order the defendant to

(a) submit to psychiatric observation and examination, and for this purpose the defendant may be remanded to any available clinic, hospital or institution for a period not exceeding sixty (60) days, or

(b) submit to diagnostic observation and examination, and for this purpose the defendant may be committed to a state correctional diagnostic and classification center for a period not exceeding sixty (60) days.  The report of such examination may be considered the equivalent of a pre-sentence investigation report.

In this fashion, under *Martin,* sentencing courts must inquire whether the sentence imposed was considered within the context of the defendant's character:

At least two factors are crucial to such determination— the particular circumstances of the offense and the character of the defendant.  Pa.R.Crim.P. 1403(a)(2) provides that all pre-sentence reports shall include such information.  We hold that regardless of whether a pre-sentence

report is ordered, the sentencing court must at least consider these two factors in its sentencing determination. Failure to give such individualized consideration requires that these sentences be vacated.

Obviously, the extent and the contents of a pre-sentence inquiry will vary depending on the particular case. A more extensive and careful investigation is clearly called for in felony convictions, particularly where long terms of confinement are contemplated. *Id.*, 466 Pa. at 133 [351 A.2d 650].

In deciding upon a sentence, therefore, judges must possess sufficient and accurate information in order to formulate their judgment.

Where *Martin* determined that a court must consider these factors, *Riggins* took the next step of requiring that the rationale employed by the sentencer must appear on the record.[4] Writing for the majority, Mr. Justice Roberts grounded the new requirement on Pa.R.A.P. 1925:

**Rule 1925.  Opinion in Support of Order**

(a) **General rule.**  Upon receipt of the notice of appeal the judge who entered the order appealed from, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief statement, in the form of an opinion, of the reasons for the order, or for the rulings or other matters complained of, or shall specify in writing the place in the record where such reasons may be found.

In addition, as already noted, the new Code enumerated specific factors to be used as "guidelines for the articulation of reasons for its sentencing decision.  Absent a statement of reasons, the record will not reveal whether the legislatively mandated factors have been considered."

Construed together, therefore, *Martin* and *Riggins* decided that courts are obligated to consider the defendant's

---

**4.**  The numerous familiar benefits to the administration of justice which accrue from this procedure are detailed in *Riggins,* and it is not necessary to repeat them here.  Also see, *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974);  and *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972).

character before handing down a sentence, and that the judge has to articulate his reasons on the record. As suggested in *Martin,* a full pre-sentence report will help to rationalize the sentencing process.

Subsequent interpretations of *Riggins* by this Court, largely under the authorship of Mr. Justice Roberts, quickly brought our law within the ambit of *Martin–Riggins.* In *Commonwealth v. Kostka,* 475 Pa. 85, 379 A.2d 884 (1977), a defendant complained successfully that the sentencing court sent him to prison without weighing the possibility of probation as required by the Sentencing Code despite defense counsel's specific references to code provisions which would not favor incarceration. There was no record that the "legislatively mandated factors have been considered." In *Commonwealth v. Knight,* 479 Pa. 209, 387 A.2d 1297 (1978), remand was unwarranted because a court-ordered pre-sentence report sufficiently articulated for the record the judge's consideration of mitigating factors. In *Commonwealth v. Butch,* 487 Pa. 30, 407 A.2d 1302 (1979), the case was remanded because the sentencer failed to give accorded weight on the record to the alternative of probation. By contrast, in *Commonwealth v. Edrington,* 490 Pa. 251, 416 A.2d 455 (1980), the sentence was upheld where a full pre-sentence report had been prepared, and the judge had articulated the basis of the punishment at the time of sentence. While these cases formed the present case law,[5] they offered little guidance as to the sufficiency of detail and particularity required to pass review. That task has fallen largely to the Superior Court.

In *Commonwealth v. Walton,* 289 Pa.Superior Ct. 411, 433 A.2d 517 (1981), the per curiam opinion noted that, "Our Court is not of one mind, however, with respect to how technical our review of sentences should be." A survey of

5. Mr. Justice Nix, now Chief Justice, dissented vigorously in *Martin* and *Kostka, supra.* Generally speaking, these dissents take the position that appellate courts should stay their hand in deference to the lower court. In particular cases, Mr. Justice Nix argued that the crimes speak for themselves and that the records, even in the absence of pre-sentence reports, demonstrate ample evidence of judges weighing all information in the exercise of discretion.

that Court's decisions reveals two broad and divergent schools of thought on this issue with ambiguities even present within each school. Mandating specificity on the one hand is a series of opinions by Judge Spaeth interpreting *Riggins* generally beginning with *Commonwealth v. Wicks*, 265 Pa.Superior Ct. 305, 401 A.2d 1223 (1979), and *Commonwealth v. Valentin*, 259 Pa.Superior Ct. 496, 393 A.2d 935 (1978). Although the latter case acknowledged that a full pre-sentence report satisfied *Riggins*, in *Wicks* Judge Spaeth insisted on a more elaborate demonstration of the weighing process:

> It is true, as the Commonwealth points out, that the court did have a pre-sentence report and did hear testimony concerning appellant's background, drug problem, and home life. *Testimony*, however, and the contents of a pre-sentence report, cannot constitute a statement of *reasons;* they rather constitute only the beginning of the process by which the court formulates its statement of reasons. Having received the testimony and pre-sentence report, the court must evaluate them; the testimony may well be in conflict, or not be credible, or otherwise not acceptable to the court, and the same may be so of the contents of the pre-sentence report. This evaluation completed, the court must examine the facts, as it has determined them to be, in light of the statutory guidelines for sentencing. Then, and only then, should the court decide what sentence should be imposed. Finally, having made that decision, the court must state its reasons for the sentence.

*Wicks* went on to hold that:

> In the second place, and of decisive importance, the court's statements were insufficient because, in consequence of their brevity and conclusory quality, they do not manifest a consideration of the statutory guidelines for sentencing, nor otherwise explain the reasoning behind the sentences imposed. Nor is there any statement of reasons in the lower court's opinion filed pursuant to this appeal. See, *Commonwealth v. Wertz*, 252 Pa.Su-

per. 584, 384 A.2d 933 (1978) (where neither record nor lower court opinion contains reasons for sentence imposed, remand for resentencing required).

Three years later, Judge Spaeth dissented sharply in *Commonwealth v. Rooney,* 296 Pa.Superior Ct. 288, 442 A.2d 773 (1982), which determined that the court below had established a sufficiency of recorded explanation of the reasons for the penalty. There he called for what has become known as a "dual responsibility" procedure. First, the sentencing judge must satisfy a "fact-finding" responsibility by which sufficient information is gathered to determine the circumstances of the offense and character of the defendant. The second responsibility involves "application-and-explanation," the means by which the information is applied to statutory requirements. Five months later, and now in the majority, the "dual responsibility" analysis was repeated:

A sentencing judge has a dual responsibility. The first responsibility is a fact-finding responsibility: the judge must be sure he had enough information. The second responsibility is an application-and-explanation responsibility: the judge must apply to the information he has gathered the guidelines specified in the Sentencing Code, 42 Pa.C.S. § 9701 et seq., and explain how the sentence he has selected is responsive to, and reflects the standards embodied in, those guidelines. If the judge fails to fulfill these responsibilities, we must vacate the sentence and remand for resentencing. *Commonwealth v. Kraft,* 294 Pa.Superior Ct. 599, 440 A.2d 627 (1982); *Commonwealth v. Doyle,* 275 Pa.Superior Ct. 373, 418 A.2d 1336 (1979); *Commonwealth v. Wicks, supra.* Here, we are not satisfied that either responsibility has been fulfilled. As regards fact-finding, the psychiatric testimony seems to us inadequate and confusing; and as regards application-and-explanation, we are unable to determine why appellant was imprisoned rather than involuntarily committed. We are confident, given the lower court's obvious concern, that on remand, with the help of further

testimony, including a fresh look at appellant's condition, these issues will be resolved.

*Commonwealth v. Edwards*, 303 Pa.Superior Ct. 454, 450 A.2d 15 (1982).[6]

Other decisions further reinforced the argument that *Riggins* required legal fastidiousness on the record. The sentencing judge must state "the thought processes by which he arrives at a particular sentence." *Commonwealth v. O'Brien*, 282 Pa.Superior Ct. 193, 422 A.2d 894 (1980). On another occasion, the Superior Court went so far as to shift the burden of proof to the court as against a psychologist's report:

> Of course, the court is not bound by the psychological evaluation. We feel, however, that the court should explain its reasons for a disposition of appellant's case that differs so radically from that suggested by the psychologist.

*Commonwealth v. Holler*, 326 Pa.Superior Ct. 304, 473 A.2d 1103 (1984). In *Commonwealth v. Cruz*, 291 Pa.Superior Ct. 486, 436 A.2d 220 (1981), the Court held:

> The statement by the sentencing judge in the instant case either fails to inform as to the weight accorded factors individual to the defendant as required by 42 Pa.C.S. § 9721(b) or demonstrates that the only factor given any weight by the sentencing court was the nature of the crime. As has been repeatedly held in this Commonwealth, all of the factors set forth in the Sentencing Code must be given due consideration, and a statement of the consideration given to factors individual to the circumstances of the crime and of the defendant must be made in open court. (footnotes omitted).

Emphasis on detailed explanations, according to this approach, must take precedence even where the sentencing

---

**6.** *Rooney* was filed on March 5, 1982, and Judge Spaeth was in dissent. *Edwards* was filed on August 20, 1982, and Judge Spaeth wrote for a unanimous panel. The shifting sands of the law on this subject are demonstrated vividly by this comparison.

court has indicated that it has looked at the defendant's background:

> The evidence indicative of the character of the accused was referred to by defense counsel when he stated that appellant had no prior record, had been employed, and successfully completed his G.E.D. program. To this remark, the trial court said that he considered appellant's "past arrest history" and his "good behavior at the Butler County Prison." Sentencing Transcript at 2–3. These references made by the trial court were not sufficiently detailed. *See, Commonwealth v. Taylor*, 290 Pa.Super. 362, 363, 434 A.2d 794, 795 (1981) ("the decisions of our court and the Supreme Court insist that the trial judge explain *in detail* the reasons for the sentence imposed....") (Emphasis added.) Furthermore, arguments of counsel are not a substitute for dispensing with a statement of reasons to be made by the trial court.... In the instant case, the trial court did state that he had "considered [appellant's] rehabilitative needs ... the need of protection of the public ... the alternatives in sentencing such as probation, total or partial confinement, a fine, or just plain guilt without any further court action." Sentencing Transcript at 3. However, these boilerplate reasons also are insufficient to rescue this deficient record.

*Commonwealth v. McDonald*, 322 Pa.Superior Ct. 110, 469 A.2d 206 (1983). Also see, *Commonwealth v. Bryner*, 285 Pa.Superior Ct. 305, 427 A.2d 236 (1981). Similarly, in *Commonwealth v. Fisher*, 261 Pa.Superior Ct. 82, 395 A.2d 953 (1978), it was held:

> the boilerplate reasons listed by the trial court ... fall far short of "reasoned basis" discussed by the *Riggins* court. Although the trial court at sentencing alluded to all the important considerations that are involved in sentencing a defendant, it gave no consideration of how these considerations applied to appellant. In short, this record does not supply this Court with sufficient information for a meaningful review of the sentence imposed.

Identical conclusions were reached in *Commonwealth v. Mahan*, 271 Pa.Superior Ct. 396, 413 A.2d 725 (1979), and *Commonwealth v. Fornataro*, 257 Pa.Superior Ct. 399, 390 A.2d 1297 (1978).

This sampling of cases amply demonstrates an interpretation of *Riggins* as requiring a detailed, highly technical statement which must appear on the record, and we take special note of that portion of the argument which holds that the mere existence of a pre-sentence report alone cannot fulfill the requirements of *Riggins* where elaboration does not occur in the sentencing process.

Contrasting holdings of the Superior Court, however, have rejected this line of reasoning. In *Commonwealth v. Walton*, for example, the per curiam opinion held:

We do not require that a trial court in setting forth its reasons for sentence use the Sentencing Code as a checklist and refer to each applicable provision. However, in exercising its discretion in imposing sentence there must be some evidence that the court has carefully considered the weight to be given to each of the grounds set forth in the applicable sections dealing with probation, partial confinement and total confinement. Within the framework of the facts of each individual case, the sentencing court must enunciate to the defendant the underlying reasons for the sentence imposed.

Also see, *Commonwealth v. Zimmerman*, 282 Pa.Superior Ct. 286, 422 A.2d 1119 (1980), which concluded that "a statement of reasons should not be held insufficient when it is apparent that the court considered and applied the Code even though it made no explicit reference to those guidelines."

Finally, we point to the concurring opinion of Judge Price in *Commonwealth v. Doyle*, 275 Pa.Superior Ct. 373, 418 A.2d 1336, 1345–1346 (1979):

Several interesting and not altogether wholesome developments have been reflected in our decisions since our supreme court ordered us to operate in panels. One such concern is the increasingly fine web we are spinning

around trial courts as regards sentencing procedures. In *Commonwealth v. Wicks*, 265 Pa.Super. 305, 401 A.2d 1223 (1979), for example, this court remanded the case for resentencing on the basis that the sentencing judge failed to adhere to the mandates of *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977). Although Judge Spaeth in *Wicks* noted that this court has never required the sentencing judge to specifically cite or utilize the exact language of the Sentencing Code, the result strongly intimated that such a practice would be all but required unless, on appeal, this court could glean from the words of the trial court that the Code was indeed considered. Instantly, the majority reiterates and enlarges on the technicalities of sentencing, resolutely marching, to a cadence set by *Wicks*, down a path which must eventually lead to a requirement that a sentencing judge quote chapter and verse of the Sentencing Code in order to satisfy our standard. As I was not on the *Wicks* panel, I had no voice in its outcome, although I harbored grave doubts as to its rationale. Here, however, I am permitted a word on the tortured course the majority travels, and that word is "ridiculous." I do not read *Commonwealth v. Kostka*, 475 Pa. 85, 379 A.2d 884 (1977), *Commonwealth v. Riggins*, *supra*, and other authority from our supreme court to require such a super-technical approach.

Nor do we agree with *Wicks* or its progeny cited above. Judge Price was correct, for the technical punctiliousness of those cases erected a cathedral of philosophical speculation far beyond what we ever intended in *Riggins*. Today, of course, ordering of pre-sentence reports is the practice everywhere. We are indebted to *Martin–Riggins* for teaching the judiciary that a convicted defendant cannot be sentenced on the basis of the crime alone and that a full pre-sentence report informs the sentencing procedure.

We emphatically reject, therefore, interpretations of our law in this area which call for separate, written opinions embodying exegetical thought. Where pre-sentence reports exist, we shall continue to presume that the sentencing

judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand. For that reason, *Wicks* and its voluminous progeny represent an intolerable deviation from our original intent on this issue.

In the instant case under our review, the Superior Court remanded the case for resentencing because "the trial court appears to have fulfilled the fact-finding responsibility but not the explanation responsibility. The trial court did order and review a pre-sentence report. It also reviewed numerous letters dealing with Appellant's character.... The problem is not that the court had insufficient information before it. Rather, the court failed to make a meaningful explanation of which facts it considered to be significant and what weight it allotted to these factors." (p. 13). In support of this per curiam argument,[7] the Superior Court cites *Wicks, Holler* and *Cruz*, the very cases which we have criticized herein.

We criticize them again, for we fail utterly to see how, based on the Superior Court's own statement of the case above, it is at all rational to believe that the sentencing

7. Judge Tamilia dissented.

judge could not have been so informed as to have arrived at a balanced judgment in imposing judgment.

As we recall the words of Judge Price quoted above, we vacate the order of the Superior Court and reinstate the sentence.

ZAPPALA, J., concurs in the result.