2014 PA Super 168

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WALTER PAUL RAVEN | |
| Appellant | No. 1341 MDA 2013<br>No. 1342 MDA 2013 |

Appeal from the Judgments of Sentence of June 10, 2013
In the Court of Common Pleas of Luzerne County
Criminal Division at Nos.: CP-40-CR-0003415-2012
CP-40-CR-0003629-2012

BEFORE:  PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

OPINION BY WECHT, J.:                    **FILED AUGUST 12, 2014**

Walter Raven appeals his June 10, 2013 judgments of sentence.  We affirm.

On September 18, 2012, Raven was charged at CP-40-CR-0003415-2012 ("3415-2012") with accidents involving death or personal injury ("AIDPI"), AIDPI while not properly licensed, driving while operating privileges suspended or revoked–DUI related ("DWS–DUI related"), habitual offenders, careless driving, tampering with or fabricating physical evidence,

_____

[*]     Retired Senior Judge assigned to the Superior Court.

and several related summary offenses.[1]  The sentencing court[2] aptly has

summarized the factual history of 3415-2012 as follows:

> On September 2, 2012, at approximately 12:19 a.m., law enforcement officers were dispatched to 304 State Route 315, Pittston Township, Luzerne County, Pennsylvania to investigate a motor vehicle accident.  Two individuals, Donnie Pizano and Robin Walsh, were killed in the accident.  They had been riding a motorcycle.  The vehicle which struck the motorcycle fled the scene.
>
> Further investigation revealed that [Raven] had been operating the vehicle which struck the motorcycle and fled the scene. Within twelve hours of the accident, [Raven] power washed his vehicle along with the assistance of another individual.  After obtaining a search warrant, police officers seized [Raven's] vehicle and observed damage consistent with the accident. Witnesses were interviewed and identified [Raven] as the driver of the vehicle involved in the accident.  At the time of the accident, [Raven] was operating his vehicle with a license that had been suspended due to driving under the influence of a controlled substance.

Sentencing Court Opinion ("S.C.O."), 9/12/2013, at 1 (unnumbered).

At the time of this incident, Raven also had a pending criminal case at

CP-40-0003629-2012 ("3629-2012").  That case arose from an incident that

occurred on February 8, 2011.  On that date, Sergeant Leonard Galli of the

Exeter Borough Police Department contacted Raven through a confidential

---

[1]  75 Pa.C.S. §§ 3742, 3742.1, 1543(b), 6503.1, 3714(b), and 18 Pa.C.S. § 4910, respectively.

[2]  Because both of Raven's contentions on appeal relate to the propriety of his sentence, we refer to the trial court as the sentencing court.

informant ("CI") and arranged for the purchase of prescription narcotics. Thereafter, Raven met with the CI and delivered eight morphine sulfate pills to him in exchange for $100. Sergeant Galli subsequently filed a criminal complaint charging Raven with possession of a controlled substance and delivery of a controlled substance.[3]

On May 3, 2012, Raven entered into negotiated plea agreements at both 3629-2012 and 3415-2012. At 3415-2012, Raven pleaded guilty to AUDI, AIDPI while not properly licensed, DWS–DUI related, habitual offenders, careless driving, and tampering with or fabricating evidence. At 3629-2012, Raven pleaded guilty to one count of delivery of a controlled substance.

On June 10, 2013, Raven was sentenced at both cases. At that hearing, the court sentenced Raven within the standard range of the sentencing guidelines for each offense.[4] Imposed consecutively, those sentences resulted in an aggregate term of seventy-eight to three hundred months' incarceration. On June 19, 2013, Raven timely filed a post-

_____

[3]    35 P.S. §§ 780-113 (a)(16) and (a)(30).

[4]    Specifically, the sentencing court imposed separate twenty-one to eighty-four-month terms of imprisonment for delivery of a controlled substance, AIDPI, and AIDPI while not properly licensed. The court imposed separate sentences of six to twenty-four months' imprisonment for habitual offenders, and for tampering with physical evidence. The court also sentenced Raven to ninety days' imprisonment for DWS–DUI related. Each sentence was ordered to run consecutively to the others.

sentence motion seeking to modify his sentence. Therein, Raven argued, *inter alia*, that his AIDPI and AIDPI while not properly licensed convictions should have merged for the purposes of sentencing. Raven also argued that the sentencing court failed to consider the mitigating evidence that he presented at the June 10, 2013 sentencing hearing. On June 28, 2013, the sentencing court denied Raven's post-sentence motion without a hearing.

On July 16, 2013, Raven filed notices of appeal at both 3629-2012 and 3415-2012. On July 17, 2013, the sentencing court ordered Raven to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Raven timely complied. On September 12, 2013, the sentencing court issued an opinion pursuant to Pa.R.A.P. 1925(a).[5]

Raven presents the following issues for our consideration:

1. Whether, based upon the elements of the crimes and the underlying facts, the consecutive sentence imposed relative to [AIDPI] while not properly licensed, [DWS–DUI related], and habitual offenders should have been merged?[6]

2. Did the [sentencing c]ourt impose a manifestly excessive and unreasonable sentence as a result of failing to consider the relevant sentencing criteria, including protection of the public, the gravity of the underlying offense[,] and the rehabilitative

_____

[5] On August 19, 2013, we consolidated Raven's appeals *sua sponte*.

[6] In his post-sentence motion, Raven argued that the sentencing court erred in failing to merge his convictions for AIDPI and AIDPI while not properly licensed. Evidently, Raven has abandoned this claim on appeal, because he now argues that DWS–DUI related and habitual offenders merge with AIDPI while not properly licensed.

> needs of [Raven,] and thereby fail[] to impose an individualized sentence when the [c]ourt sentenced [Raven] to the highest sentence allowable of the standard range of the sentencing guidelines and ran each and ever[y] sentence, under 3415-2012 [and] 3629-2012, consecutive[ly] to one another?

Brief for Raven at 6 (citations omitted).

Whether Raven's convictions merge for the purposes of sentencing is a question implicating the legality of his sentence.[7]  Consequently, our standard of review is *de novo* and the scope of our review is plenary.  **See Commonwealth v. Collins**, 764 A.2d 1056, 1057 n.1 (Pa. 2001).

The merger doctrine is a rule of statutory construction designed to determine whether the legislature intended for the punishment of one offense to encompass that of another offense.  **Commonwealth v. Davidson**, 938 A.2d 198, 217 (Pa. 2007).  The objective of the doctrine is to prevent a defendant from being punished more than once for the same criminal act.  **Id**.

In 2002, the Pennsylvania Legislature enacted Section 9765 of the Sentencing Code, which provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense.  Where crimes merge for sentencing purposes, the

_____

[7]  Challenges to the legality of sentence are non-waivable.  **See Commonwealth v. Robinson**, 931 A.2d 15, 24 (Pa. Super. 2007).  For this reason, the Commonwealth's contention that Raven has waived his first claim is without merit.  **See** Brief for Commonwealth at 5.

court may sentence the defendant only on the higher[-]graded offense.

42 Pa.C.S. § 9765. Accordingly, merger is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other. *Id.*

Despite Section 9765's codification of our merger doctrine, both this Court and the Pennsylvania Supreme Court historically have struggled to articulate and apply the proper test for merger claims. In **Commonwealth v. Jones**, our Supreme Court addressed the issue of merger pursuant to section 9765, but was unable to reach a consensus. 912 A.2d 815 (Pa. 2006); **see Commonwealth v. Williams**, 920 A.2d 887, 889 (Pa. Super. 2007) (noting that "**Jones** generated a 'lead opinion' approach to merger and a 'dissenting opinion' approach to merger").[8]

In the lead plurality opinion in **Jones**, Justice Castille (now Chief Justice) adopted a "practical, hybrid approach" that requires courts to "evaluate the statutory elements [of each crime], with an eye to the specific allegations leveled in the case." 912 A.2d at 822. Justice Newman wrote a

_____

[8] As the **Jones** Court itself notes, jurisprudence on this issue has often created fractured plurality opinions. In **Jones**, Chief Justice Cappy and Justice Baer joined Justice Castille's lead opinion. Justice Newman wrote a dissent, joined by Justice Eakin. Justice Saylor generally agreed with Justice Newman's dissenting opinion, but concurred in the result of the lead opinion, because the criminal acts at issue in **Jones** pre-dated the effective date of section 9765. Justice Nigro did not participate.

dissent favoring the adoption of a strict "statutory elements" test in accordance with Section 9765. *Id.* at 827 (Newman, J., dissenting) ("[T]he elements of these two crimes differ, and sentencing thus cannot be merged pursuant to our jurisprudence and the legislative intent as evidenced by 42 Pa.C.S. § 9765.").

One year after *Jones*, a panel of this Court addressed the merger doctrine in *Commonwealth v. Williams*, 920 A.2d 887 (Pa. Super. 2007). In *Williams*, the appellant contended that the trial court erred in imposing consecutive sentences following his guilty plea to firearms possessed by a felon and carrying a firearm without a license. We began by noting that, with respect to offenses occurring after the effective date of section 9765, neither the plurality opinion nor the dissenting opinion in *Jones* garnered the support of more than half of the Justices. This Court then adopted Justice Newman's approach as more accurately reflective of our merger doctrine jurisprudence and the legislative intent of section 9765. *Williams*, 920 A.2d at 891.

The Pennsylvania Supreme Court has since rejected the "practical, hybrid approach" espoused by the *Jones* plurality and held that the plain language of Section 9765 precludes courts from merging sentences when each offense contains a statutory element that the other does not. *Commonwealth v. Baldwin*, 985 A.2d 830, 834 (Pa. 2009). In *Baldwin*, Chief Justice Castille articulated the scope of this approach:

> The General Assembly has taken it upon itself to choose the merger test that allows for the most expansive sentencing exposure without accounting for any of the refinements and nuances in our prior jurisprudence in this area. But, there is more to the jurisprudence of sentencing than such simple, procrustean dictates. Although the statute allows for maximum exposure for criminal sentences as a constitutional matter, there still exists substantive review of individualized sentencing decisions. Thus, I would caution both trial courts and the Superior Court, as the frontline appeals court reviewing sentences, to be cognizant of the fact that, while **the statute may put a draconian end to merger claims**, it does not supplant the review for reasonableness which is independently commanded by Section 9781 of the Judicial Code.

**Baldwin**, 985 A.2d at 839 (Castille, C.J., concurring).

Instantly, Raven contends that the sentencing court erred in failing to merge his sentences for DWS–DUI related and habitual offenders with his sentence for AIDPI while not properly licensed. There is no dispute that all three of these offenses arose out of the same set of facts, constituting a single criminal act. **See** S.C.O. at 2. Therefore, the only issue for our review is whether all of the statutory elements of one of the offenses are included within the statutory elements of another. **See Baldwin**, *supra* at 837; 42 Pa.C.S. § 9765. Raven argues that they are so included. We disagree. The specific crimes relevant to our review are defined as follows:

> **[AIDPI] while not properly licensed:** A person whose operating privilege was disqualified, canceled, recalled, revoked or suspended and not restored or who does not hold a valid driver's license and applicable endorsements for the type and class of vehicle being operated commits an offense under this section if the person was the driver of any vehicle and caused an accident resulting in injury or death of any person.

75 Pa.C.S. § 3742.1.

- 8 -

**[DWS–DUI Related]:** A person who drives a motor vehicle on a highway or traffic[-]way of this Commonwealth at a time when the person's operating privilege is suspended or revoked[:]

    (1)    as a condition of acceptance of Accelerated Rehabilitative Disposition ["ARD"] for a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) or the former section 3731,

    (2)    because of a violation of section 1547(b)(1) (relating to suspension for refusal) or 3802 or former section 3731[,] or

    (3)    is suspended under section 1581 (relating to Driver's License Compact) for an offense substantially similar to a violation of section 3802 or former section 3731

75 Pa.C.S. § 1543(b)(1) (formatting modified for clarity).

**Habitual offenders**: A habitual offender under section 1542 . . . who drives a motor vehicle on any highway or trafficway of this Commonwealth while the habitual offender's operating privilege is suspended, revoked or canceled commits a misdemeanor of the second degree.

75 Pa.C.S. § 6503.1. Section 1542 defines a "habitual offender" as any person whose driving record demonstrates that they have accumulated three convictions for any of the statutorily enumerated traffic offenses within a period of five years. 75 Pa.C.S. § 1542.

Raven's conviction for AIDPI while not properly licensed required the Commonwealth to demonstrate that Raven caused an accident that resulted in the injury or death of a person, and that his operating privilege was either disqualified, canceled, recalled, revoked or suspended (and not restored), or that Raven did not hold a valid driver's license. **See** 75 Pa.C.S. § 3742.1. Raven's conviction for DWS–DUI related required the Commonwealth to

demonstrate that Raven's operating privilege was suspended or revoked as a condition of acceptance of ARD (for driving under influence, or for a similar offense that occurred outside of the Commonwealth), or for a refusal to submit to chemical testing. A review of the plain language of these statutes demonstrates that DWS–DUI related clearly imposes an additional requirement that a license suspension be related to DUI or ARD.[9] Such an element is not contemplated by the AIDPI statute.

Raven also contends that a DUI–related suspension—as is required by Section 1543(b)—is necessarily included within the terms "disqualified, canceled, recalled, revoked or suspended," contained within the AIDPI statute. Therefore, according to Raven, the DUI related suspension element is "included" within the elements of AIDPI while not properly licensed. A review of our case law demonstrates that this argument is unavailing. In **Commonwealth v. Rhoades**, this Court addressed the issue of whether an appellant's convictions for two separate counts of aggravated assault should merge. 8 A.3d 912 (Pa. Super. 2010). The two subsections of our aggravated assault statute at issue in **Rhoades** provided as follows:

_____

[9] Raven's contention that these offenses should merge seems to be based upon his belief that his DWS conviction "require[s] only the operation of a motor vehicle by an individual not properly licensed." Brief for Raven at 22. This is incorrect. Although Raven pleaded guilty to a violation of DWS–DUI related, his argument erroneously relies upon the statutory language contained within the non-DUI related subsection. **See id.** at 21; 75 Pa.C.S. § 1543(a).

- 10 -

A person is guilty of aggravated assault if he:

(1)     attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

* * *

(4)     attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;

18 Pa.C.S. § 2702.

In finding that the subsections did not merge, we explained as follows:

[T]he charges for aggravated assault at counts [six] and [seven], 18 Pa.[C.S.] §§ 2702(a)(1) and 2702(a)(4), respectively, did not share identical statutory elements. . . . [W]hen the two subsections are read together it is apparent that subsection [four] contains an element that is not found in the greater offense of subsection [one]. Specifically, subsection [four] requires that the assault be caused or attempted "with a deadly weapon." This element is not contained in subsection [one], which prohibits any attempt to cause or the causing of serious bodily injury but which does not limit itself to any particular mode of causing such an injury. It is therefore possible that a subsection [one] assault may be proved in some cases without necessarily proving a subsection [four] assault.

*Commonwealth v. Rhoades*, 8 A.3d 912, 918 (Pa. Super. 2010). As in

*Rhoades*, it is entirely possible that a conviction for AIDPI while not

properly licensed could be sustained without necessarily proving a Section

1543(b) violation.[10] As discussed *supra*, Raven's conviction for AIDPI while

_____

[10]     *See generally* 75 Pa.C.S. § 1532 (enumerating certain offenses for which the Department of Transportation may suspend a driver's operating privilege).

- 11 -

not properly licensed did not require any particular category of license suspension, whereas his conviction for DWS–DUI related did. Because each offense requires proof of an element that the other does not, Raven's sentences do not merge.

Raven also maintains that his habitual offenders conviction should merge with his conviction for AIDPI while not properly licensed. This claim is similarly meritless. A conviction for habitual offenders requires the Commonwealth to demonstrate that a person has accumulated three separate convictions for serious traffic offenses within a five-year period. *See* 75 Pa.C.S. § 1542. AIDPI while not properly licensed has no such element, and additionally requires that a person cause an accident resulting in injury or death. Because these two offenses each require proof of an element that the other does not, Raven's imposed sentences do not merge.

Raven next challenges the discretionary aspects of his sentence. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004).

To obtain review on the merits of a challenge to the discretionary aspects of his sentence, Raven must meet two requirements. First, Raven

must include a Pa.R.A.P. 2119(f) statement in his brief.[11]  Second, he must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code.  42 Pa.C.S. § 9781(b).  A substantial question requires a showing that "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Commonwealth v. Mouzon*, 812 A.2d 617, 627 (Pa. 2002).  Our inquiry must focus upon the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits.  *Id.*

Raven's brief contains the necessary Rule 2119(f) statement, and therefore, is in technical compliance with the requirements to challenge the discretionary aspects of his sentence.  Therein, Raven contends that the trial court failed "to consider his health concerns, his reputation for being a non-violent person, and his willingness to assist others, even when it placed him in danger."  Brief for Raven at 25.  Raven also argues that the sentencing

_____

[11]    In pertinent part, Rule 2119 provides:

> An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence.  The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

Pa.R.A.P. 2119(f).

court's decision to impose his sentences consecutively raises a substantial question because it resulted in a sentence that was manifestly excessive to his crimes. ***Id.***

It is well-established that a sentencing court's failure to consider mitigating factors raises a substantial question. ***See Commonwealth v. Felmlee***, 828 A.2d 1105, 1107 (Pa. Super. 2003). However, a sentencing court generally has discretion to impose multiple sentences concurrently or consecutively, and a challenge to the exercise of that discretion does not ordinarily raise a substantial question. ***Commonwealth v. Pass***, 914 A.2d 442, 446–47 (Pa. Super. 2006); ***Commonwealth v. Hoag***, 665 A.2d 1212, 1214 (Pa. Super. 1995) (stating that an appellant is not entitled to a "volume discount" for his crimes by having his sentences run concurrently).

We are mindful, however, that "the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." ***Commonwealth v. Mastromarino***, 2 A.3d 581, 587 (Pa. Super. 2010). An appellant making an excessiveness claim raises a substantial question when he "sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." ***Mouzon***, 812 A.2d at 627. Applying ***Mouzon***, this Court has held that an excessive sentence claim—in conjunction with an assertion that the court

failed to consider mitigating factors—raises a substantial question. *Commonwealth v. Perry*, 883 A.2d 599, 602 (Pa. Super. 2005). Because we interpret Raven's arguments as raising substantial questions under both *Felmlee* and *Mastromarino*, we grant Raven's petition for allowance of appeal and consider the merits of his claim.

Our standard of review in this context is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006). Additionally, our review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. §§ 9781(c) and (d). Subsection 9781(c) provides:

The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781(c).

In reviewing the record, we consider:

(1)     The nature and circumstances of the offense and the history and characteristics of the defendant.

(2)     The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3)     The findings upon which the sentence was based.

(4)     The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

Instantly, Raven's sentence falls within the strictures of our sentencing guidelines. He, therefore, must demonstrate that the application of those guidelines would be clearly unreasonable. *Id.* § 9781(c)(2). Raven submits that the sentencing court did not weigh the nature and circumstances of his crimes, or his mitigating history and characteristics. To this end, Raven argues that the sentencing court disregarded Raven's testimony to the effect that he was unaware he had caused an accident, and that he fled from the scene to obtain medication from his home. Brief for Raven at 30. The sentencing court's statements prior to imposing sentence belie Raven's allegation that the court failed to consider this information. *See* Notes of testimony ("N.T."), 6/10/2013, at 25 ("I don't see any way, based upon the physical condition of that vehicle, that you didn't know you were involved in an accident.").

Despite Raven's assertions to the contrary, the sentencing court was unquestionably aware of Raven's background. The court heard testimony from two of Raven's close friends, from Raven's sister, and from Raven himself. *Id.* at 11-17. This testimony detailed Raven's various medical conditions, his reputation for being a non-violent person, and his willingness to assist others. The sentencing court also reviewed letters submitted on behalf of Raven, and several victim impact statements presented by the Commonwealth. *Id.* at 7. Finally, the court had the benefit of a pre-sentence investigation report, and considered all of the mitigating information contained therein.[12] N.T. at 5.

Based upon all of this evidence, the court imposed consecutive standard range sentences for each offense. The gist of Raven's argument is not that the court failed to consider the pertinent sentencing factors, but rather that the court weighed those factors in a manner inconsistent with his wishes. Accordingly, we conclude that the record supports the sentencing court's reasoning and that its decision conforms to the applicable law. The sentence imposed for each of Raven's offenses was within the standard

_____

[12] Raven argues that the mere fact that the sentencing court was provided with his pre-sentence investigation report does not demonstrate that the court properly considered the mitigating circumstances contained within it. Brief for Raven at 34. We disagree. *See Commonwealth v. Devers*, 546 A.2d 12 (Pa. 1988) (holding that when a sentencing court has the benefit of a pre-sentence report, we must presume that the sentencing judge was aware of, and duly considered, any character-related information contained therein).

range of the sentencing guidelines, and the record reflects that the court carefully considered all of the evidence presented at the sentencing hearing. As such, we discern no abuse of discretion, nor can we conclude that the sentencing court arrived at a manifestly unreasonable decision. ***See Shugars***, 895 A.2d at 1275.

Judgments of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/2014