J-S21011-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LAUREN O'CONNOR | : | |
| | : | |
| Appellant | : | No. 879 WDA 2019 |

Appeal from the Judgment of Sentence Entered April 4, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0014388-2016

BEFORE: LAZARUS, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    FILED MAY 08, 2020

Lauren O'Connor appeals from the judgment of sentence, entered in the Court of Common Pleas of Allegheny County, following her convictions for conspiracy to commit third-degree murder,[1] carrying a firearm without a license,[2] and possession of drug paraphernalia.[3] Upon careful review, we affirm.

The Honorable Beth A. Lazzara relied on the Commonwealth's factual recitation at O'Connor's guilty plea hearing in summarizing the facts of the case as follows:

On or about August 22[,] 2016, [] Lauren O'Connor arranged to meet with Ryan Ramirez[.] O'Connor drove to Settlers Cabin

---

[1] 18 Pa.C.S.A. §§ 903, 2502(c).

[2] 18 Pa.C.S.A. § 6106(a)(1).

[3] 35 P.S. § 780-113(a)(32).

Park, and [] Kristopher [] Lott got into the vehicle with Ramirez and O'Connor. Lott had never met Ramirez but had been romantically involved with O'Connor. Shortly into the drive[,] Lott [] physically assault[ed] Ramirez and brandished a firearm.

O'Connor then drove to a PNC Bank in Burgettstown, Pennsylvania. [T]here was a Google search for ["]PNC Banks near me["] [made from O'Connor's cellular phone] and a surveillance video at the Burgettstown PNC Bank branch location [captured video of O'Connor's actions at that location.]

While at the PNC Bank, Lott accompanied Ramirez to an ATM and to a teller inside the bank to ensure that Ramirez emptied out his bank account and handed over the funds. [R]emaining in the parking lot, O'Connor is seen engaging in a discussion with Lott and Ramirez [] prior to [their entrance] into the bank [].

\* \* \*

Ultimately, withdrawals in the amount of $60 and $18 [] were completed and handed over to Lott. Following the event at PNC Bank, O'Connor and Lott drove Ramirez to a remote location outside of Burgettstown. [T]here, approximately 20 feet from the roadway, [] Kristopher Lott shot Ryan Ramirez in the forehead. [] Further, the Commonwealth would have presented audio-recorded statements from [] O'Connor following the homicide in which she met with the police [for two separate interviews], handed over her cell phone and consented to searches of her home and vehicle.

O'Connor took investigators to the scene of the homicide [and testified at Lott's preliminary hearing].

\* \* \*

[Jean] Ott[, manager of Gander Mountain,] would have authenticated video captured before the homicide that showed O'Connor entering Gander Mountain [alone] and purchasing bullets compatible with the firearm that was used to murder Ramirez.

[Following Ramirez' murder,] Lott and O'Connor separated, as O'Connor went into her parents' home alone. However, at no time did O'Connor contact the authorities as to the whereabouts or the death of Ryan Ramirez [when she was away from Kristopher Lott and in her parents' home].[1]

- 2 -

¹ The [italics] portion was added pursuant to defense counsel's request at the hearing. []

[Later that day], O'Connor and Lott re-joined outside of her [parent's home. F]ollowing loitering complaints by neighbors, Lott and O'Connor were apprehended by Robinson Township Police []. They were [] in possession of a firearm inside a pink/peach canvas bag, which also contained numerous personal items belonging to O'Connor. [An] Allegheny County Medical Examiner Scientist [ballistically tested the firearm] and determined [it was] the weapon [] used in the murder of [] Ramirez. [A]lso [] in this pink/peach canvas bag [were] keys belonging to [] Ramirez[, and] his cell phone. []

Trial Court Opinion, 9/20/19, at 7-10 (italics in original).

On January 10, 2019, O'Connor pled guilty to the above charges. On April 4, 2019, the court sentenced O'Connor to twenty to forty years' imprisonment for her conspiracy conviction.⁴ O'Connor filed a timely post-sentence motion to modify sentence. Following a hearing, the trial court denied O'Connor's motion. O'Connor filed a timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

In this appeal, O'Connor raises the following claim for our review:

Was the statutory maximum sentence imposed on [] O'Connor unreasonable, manifestly excessive, contrary to the dictates of the [S]entencing [C]ode, and an abuse of discretion in that: 1) the court failed to consider and apply all of the required sentencing factors under [42 Pa.C.S. §§ 9721(b) and 9725]; 2) the court focused exclusively on the seriousness of the crime, including the same factors which constituted the elements of the crime; and 3) the court did not engage in individualized sentencing?

Appellant's Brief, at 6.

_____

⁴ O'Connor's other convictions are not at issue in this appeal.

O'Connor's claim raises a challenge to the discretionary aspects of her sentence. Such challenges are not entitled to review as of right. Commonwealth v. Caldwell, 117 A.3d 763, 768 (Pa. Super. 2015). In Caldwell, we restated our four-part test for reaching the merits of challenges to discretionary aspects of sentencing:

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

Id. (quoting Commonwealth v. Allen, 24 A.3d 1058, 1064 (Pa. Super. 2011)).

Here, O'Connor filed a timely notice of appeal and preserved the issue in a post-sentence motion. She also included a statement of reasons to allow an appeal to the discretionary aspects of her sentence pursuant to Rule 2119(f). See Appellant's Brief, at 19-24. We must, therefore, determine whether O'Connor raises a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. See Caldwell, supra.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." Commonwealth v. Prisk, 13 A.3d 526, 533 (Pa. Super. 2011). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing

- 4 -

process." Commonwealth v. Conte, 198 A.3d 1169, 1174 (Pa. Super. 2018) (quoting Commonwealth v. Dodge, 77 A.3d 1263, 1268 (Pa. Super. 2013)).

O'Connor raises several claims in her 2119(f) statement:

First, the lower court failed to state on-the-record, meaningful reasons that comport with the considerations required under 42 Pa.C.S. §9721(b), for imposing the maximum allowable sentence. . . . In addition, the court relied on an impermissible, duplicative factor, that is, the seriousness of the offense, in particular, an element of the offense, which was already accounted for in calculating the sentencing guidelines. . . . [Finally,] although her sentence was within the statutory limits and the period of incarceration imposed fell within the standard range, the court failed to impose an individualized sentence tailored to her and the attendant facts of her case, contrary to the Sentencing Code.

Appellant's Brief, at 19-24.

We have previously held that a trial court's failure "to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense, and the rehabilitative needs of [the] Appellant, as 42 Pa.C.S.A. § 9721(b) requires," raises a substantial question. Commonwealth v. Riggs, 63 A.3d 780, 786 (Pa. Super. 2012); see also Commonwealth v. Simpson, 829 A.2d 334, 338 (Pa. Super. 2003) (trial court's failure to sufficiently state reasons for sentence imposed raises substantial question). Also, a claim that the sentencing court relied on impermissible factors by considering factors already included in the sentencing guidelines raises a substantial question. Simpson, 829 A.2d at 338; see also Commonwealth v. McNabb, 819 A.2d 54, 56 (Pa. Super. 2003) (claim that sentence is excessive due to sentencing court's reliance on impermissible factors raises substantial question).

As an initial matter, for ease of consideration, we re-categorize O'Connor's three sub-claims into the following two:[5]  (1) the trial court's failure to consider all of the required sentencing factors, and (2) the trial court's consideration of impermissible factors.  Each of these claims raises a substantial question and permits us to review the merits of O'Connor's appeal. See Riggs, supra; see Simpson, supra.

We recently restated our standard of review for excessive sentencing claims as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion.  In this context, an abuse of discretion is not shown merely by an error in judgment.  Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

> Additionally, our review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. §§ 9781(c) and (d).  Subsection 9781(c) provides:

> > The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

> > * * *

> > (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable;

> > * * *

---

[5] O'Connor's third sub-claim, that the sentencing court did not engage in individualized sentencing, is essentially the same claim as her first—that the sentencing court did not consider the required sentencing factors.  See Appellant's Brief, at 6; 19-24.

> In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781(c).

In reviewing the record, we consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.

> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

> (3) The findings upon which the sentence was based.

> (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

Commonwealth v. Raven, 97 A.3d 1244, 1253-54 (Pa. Super. 2014) (internal citation omitted).

Here, O'Connor concedes that her sentence falls within the sentencing guidelines. See Appellant's Brief, at 28. Therefore, she must demonstrate that the application of the guidelines was clearly unreasonable. See § 9781(c)(2); Raven, 97 A.3d at 1254.

O'Connor claims that the sentencing court failed to consider the criteria set forth in section 9721(b). Specifically, O'Connor notes that the sentencing court failed to consider mitigating factors such as her prior record score of 0, her position within her community, supportive witness impact statements made on her behalf, her history of being the victim of multiple sexual assaults, her Type 1 Diabetes diagnosis, the sudden death of a boyfriend, her history of alcohol and drug abuse, her cooperation with law enforcement throughout

the course of the Commonwealth's investigation into Ramirez' death, and the control exerted over her by Lott. See Appellant's Brief, at 39-40; 42-43.

Contrary to O'Connor's allegation, the sentencing court's statements prior to imposing its sentence demonstrate that the court did consider this mitigating information. See N.T. Sentencing, 4/4/19, at 126-30. Additionally, at the sentencing hearing, the court noted it had read the pre-sentence report twice prior to commencing the hearing. Id. at 5. We have previously said that, "where [] the sentencing court had the benefit of a pre-sentence investigation report, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." Commonwealth v. Rhoades, 8 A.3d 912, 919 (Pa. Super. 2010) (internal quotations omitted); see also Commonwealth v. Devers, 546 A.2d 12, 18 (Pa. 1988). The sentencing court also noted that it received the "Psychiatric Presentence Evaluation" which was a separate document provided by O'Connor to the court. See N.T. Sentencing, 4/4/19, at 4; 98. Moreover, the sentencing court heard testimony from eleven witnesses, received twenty-four victim impact letters, and heard testimony from O'Connor herself. Id. at 116; 119-22. At the conclusion of the lengthy sentencing hearing, the court stated to O'Connor:

> I understand that you are telling me that you have learned something in the time that you have been incarcerated so far. You certainly will have an additional amount of time to continue that learning journey, to hopefully stay clean, to hopefully get some

skills and things that when you come out, that this entire type of episode will never happen again. Good luck to you.

Id. at 133-34.

Despite O'Connor's claims to the contrary, the sentencing court was aware of her background and took her individual characteristics into account. The sentence of twenty to forty years' of imprisonment was within the standard range, albeit the statutory maximum, and the record reflects that the sentencing court carefully considered all of the evidence presented at the sentencing hearing. Id. at 124-34. Even so, "[t]he [sentencing] court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under [s]ection 9721(b) [so long as] the record as a whole [] reflect[s] due consideration by the court of the statutory considerations." Commonwealth v. Feucht, 955 A.2d 377, 383 (Pa. Super. 2008). Consequently, there was no abuse of discretion, and the sentencing court did not arrive at a clearly unreasonable decision. See Raven, supra; 42 Pa.C.S. § 9781(c)(2).

Next, O'Connor claims the sentencing court relied upon impermissible factors, leading to "double-counting." Appellant's Brief, at 40. O'Connor urges that, pursuant to Commonwealth v. Whitmore, 860 A.2d 1032 (Pa. Super. 2004), reversed in part on other grounds, 912 A.2d 827 (Pa. 2006), and Commonwealth v. Goggins, 748 A.2d 721 (Pa. Super. 2000), "'double-counting' of a sentencing factor to justify the imposition of a sentence where that factor is already accounted for by the sentencing guidelines is an abuse of discretion." Appellant's Brief, at 40.

First, O'Connor claims the sentencing court's focus on the seriousness of her offense caused the court to double-count the offense gravity score, which is already accounted for within the guidelines. Second, she claims the court focused on her complicity in the shooting, which is an element of the crime of conspiracy, and therefore is already accounted for in the guidelines. Although O'Connor correctly states the law on double-counting, Whitmore and Goggins are inapplicable to the facts of her case because, instantly, there was no double-counting.

Whitmore and Goggins involved defendants sentenced in the aggravated range of the guidelines. In Whitmore, we held that a trial court committed reversible error in double-counting a prior conviction by considering it as the basis for imposing a statutory maximum sentence. Whitmore, 860 A.2d at 1037-38. In Whitmore, the trial court initially sentenced a defendant to what it believed was a statutory maximum sentence. Upon discovering that the defendant's prior record exposed him to a greater maximum sentence, the trial judge reconsidered the sentence and amended it to the true statutory maximum under the circumstances. In so doing, the trial court stated, "I felt that five to [ten] was the appropriate sentence because that's what I thought was the maximum sentence. . . . [Five to ten years' imprisonment] was appropriate at that time because it was the maximum. It sounds like Mr. Whitmore should go to jail for about fifty years, quite frankly." Id. at 1037 (italics in original). In reversing, we observed that,

there is no indication of record that Whitmore's prior conviction was not already factored into his prior record score under the sentencing guidelines. In fact, the record reveals that the Commonwealth was aware of Whitmore's prior conviction and in accord with [the sentencing judge's] recitation of the suggested standard range sentence.

Id. at 1038.

In Goggins, we held that a trial court impermissibly doubled-counted the defendant's prior record when it sentenced him above the mandatory minimum sentence because of that defendant's prior record. Goggins, 748 A.2d at 732. In Goggins, we held that the trial court's consideration of the defendant's "amenability to rehabilitation" amounted to reversible double-counting because the legislature had already factored that consideration into the mandatory minimum sentence under the applicable recidivist statute. Id.

Here, the court sentenced O'Connor within the standard guideline range, albeit at the top of that range—indeed, the statutory maximum sentence for third-degree murder. Judge Lazzara found that the mitigating factors relied upon by O'Connor failed to outweigh imposition of the standard range sentence. N.T. Sentencing, 4/4/19, at 130 ("You made those choices and you are responsible for those choices. And I find nothing mitigating about those choices.") (emphasis added). Although this sentence may appear harsh on its face, in actuality, the Commonwealth allowed O'Connor to plead down to third-degree murder instead of trying her for second-degree murder. N.T. Post-Sentence Motion Hearing, 5/16/19, at 23. As a result of her plea to the lesser offense, O'Connor received a significant reduction in the maximum

allowable sentence from life without parole.[6]  Unlike the defendant in Whitmore, O'Connor was not sentenced to the statutory maximum; here, a standard-range sentence was the statutory maximum.  Moreover, unlike the defendant in Goggins, O'Connor was not sentenced under a recidivist statute providing for mandatory minimum sentences.  There is no evidence of any double-counting in the record; thus, there was no abuse of discretion, and the sentencing court did not arrive at a clearly unreasonable decision.  See Raven, supra; 42 Pa.C.S. § 9781(c)(2).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/08/2020

_____

[6] See 18 Pa.C.S.A. § 1102.

- 12 -