J-A24010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHELBY DARLIN CASPER | |
| Appellant | No. 1096 WDA 2016 |

Appeal from the Judgment of Sentence June 28, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0006331-2013
CP-02-CR-0009079-2012

BEFORE:  MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                **FILED  NOVEMBER 9, 2017**

Shelby Darlin Casper appeals from the June 28, 2016 judgment of sentence entered in the Allegheny County Court of Common Pleas following her revocation of probation.  We affirm.

The trial court set forth the history of this case as follows:

> On December 6, 2012, . . . Casper, pled guilty at CC 201209079 [("CC 2012")] to one count each of Criminal Conspiracy (Burglary), Theft by Unlawful Taking and Receiving Stolen Property.[1]  This Court sentenced her to three years probation at the Conspiracy count and no further penalty at the remaining counts.  On September 25, 2013, [Casper] pled guilty at CC 201306331 [("CC 2013")] to one count of Possession of Firearm with Altered Manufacturer's Number, one count of Possession of a Controlled Substance with Intent to Deliver (PWID), one

---

[1] 18 Pa.C.S. §§ 903, 3921(a), and 3925(a), respectively.

count of Possession of a Controlled Substance, two counts of Recklessly Endangering Another Person and one count of Possession of Drug Paraphernalia.[2]   This Court sentenced [Casper] on the Possession of Firearm with Altered Manufacturer's Number count to two years of Intermediate Punishment with 3 years of concurrent probation at the PWID count, and no further penalty at the remaining charges.

On February 4, 2014, this Court found [Casper] to have violated probation at [CC 2012] by virtue of her new conviction at [CC 2013] and resentenced her to a new three[-]year term of probation.  On June 30, 2015, this Court found [Casper] to be a technical violator of her probation at both cases.  This Court revoked and reimposed probation again at [CC 2012], and took no action at [CC 2013].  On June 28, 2016, after a third violation hearing, this Court found [Casper] to be a technical violator of her conditions of probation and resentenced her at [CC 2012] to one to two years incarceration and [gave her credit for time served].  At [CC 2013], this Court imposed a period of incarceration of 42 to 100 months with three years consecutive probation.

Opinion, 3/10/17, at 2 ("1925(a) Op.").

Casper timely filed her notice of appeal.[3]  On appeal, she raises the following issue:  "Did the trial court fail to adequately consider and apply all of the relevant sentencing criteria, including the protection of the public, the gravity of the offense/violation, and especially Ms. Casper's character and

_____

[2] 18 Pa.C.S. § 6110.2(a), 35 P.S. §§ 780-113(a)(30), 780-113(a)(16), 18 Pa.C.S. § 2705, and 35 P.S. § 780-113(a)(32), respectively.

[3] On July 19, 2016, Casper filed a post-sentence motion *nunc pro tunc*. The trial court granted *nunc pro tunc* relief but did not rule on the motion. Because this is a revocation sentence, the 30-day appeal period is not tolled and Casper had to file her notice of appeal within the required 30 days. **See** Pa.R.Crim.P. 708(E).  Therefore, Casper's notice of appeal, filed on July 28, 2016, is timely.

rehabilitative needs, as required under 42 Pa.C.S.A. § 9721(b) (Sentencing generally; general standards)[?]" Casper's Br. at 6 (full capitalization omitted).

Casper is challenging the discretionary aspects of her sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa.Super. 2011). Before we address such a challenge, we first determine:

> (1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the [S]entencing [C]ode.

*Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa.Super. 2013) (quoting *Commonwealth v. Malovich*, 903 A.2d 1247, 1250 (Pa.Super. 2006)).

Casper filed a timely notice of appeal, preserved her claim in a timely post-sentence motion, and included in her brief a concise statement of reasons relied upon for allowance of appeal pursuant to Pennsylvania Rule of Appellate Procedure 2119(f). Additionally, Casper's claim that her sentence is excessive in light of the technical violations of her probation raises a substantial question. *See Malovich*, 903 A.2d at 1253 ("[A] claim that a particular probation revocation sentence is excessive in light of its underlying

technical violations can present a question that we should review."). Accordingly, we will review the merits of her claim.

"Sentencing is a matter vested within the discretion of the trial court and will not be disturbed absent a manifest abuse of discretion." *Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa.Super. 2010). "A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." *Id.* at 1283.

Upon revocation of probation, a trial court may impose a sentence of total confinement if any of the following requirements are met: "(1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court." 42 Pa.C.S. § 9771(c). "[T]he sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation." 42 Pa.C.S. § 9771(b).

Casper claims that the trial court abused its discretion in imposing an aggregate term of 54 to 124 months' incarceration plus 3 years of probation. Casper contends that the sentence was manifestly unreasonable because revocation was based solely on technical violations; the trial court failed to

consider the protection of the public, the gravity of the offense, and Casper's rehabilitative needs; and the trial court ignored key mitigating evidence.

Here, the trial court found:

> This Court considered numerous factors in sentencing [Casper], including two Pre-Sentence reports. The Pennsylvania Supreme Court has held:
>
> > Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors . . . [.] Having been informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.
>
> ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988).
>
> The hearing on June 28, 2016 was [Casper]'s third violation of probation hearing. She refused to participate in a Justice Related Services ("JRS") program and has been unable or unwilling to maintain mental health treatment compliance. She twice removed her ankle bracelet. She displayed a defiant attitude toward probation supervision and this Court. She was placed in alternative housing for a therapeutic intervention three times and was sent back to jail each time for program violations. She used marijuana daily, with her last date of usage being the date of her arrest. Yet, she denied having drug problems. She has repeatedly demonstrated through her words and her conduct that she is either unwilling or unable to be supervised in the community or to follow the reasonable rules of society.
>
> The sentence imposed was designed to afford [Casper] the opportunity to receive necessary and appropriate mental health and drug and alcohol treatment which she repeatedly failed to avail herself of while under community supervision or in alternative housing. Further, the sentence affords her the opportunity to either earn parole at her minimum or remain detained until she demonstrates stability, maturity and the ability to follow rules. Thus, this

Court did not err in sentencing her to time served on the 2012 case and a standard range period of incarceration of 42 to 100 months with three years consecutive probation on the 2013 gun and drug case.

1925(a) Op. at 6-7 (some internal citations omitted). We find no abuse of discretion.

Further, the trial court thoroughly stated on the record its reasons for imposing its sentence:

> THE COURT: . . . This is her third violation of probation hearing. She has never had JRS but she doesn't want it. She says she can do this on her own. I can't order her to be medication compliant. Without JRS, I don't feel that I can continue to have probation supervise her in the community. I don't know what else to say but on a third violation on a Felony 2 burglary of a gun[ shop], second violation on a Felony 2. She twice removed her ankle bracelet. She has displayed a terrible defiant attitude and carries an Axis II diagnosis. If you're asking me to give her another chance at probation, I don't think I'm going to be willing to do that without some support.
>
> . . .
>
> THE COURT: Ms. Casper, don't waste my time. Do you want to cooperate with the JRS plan if they accept the referral or not?
>
> THE DEFENDANT: Would that mean I would go to another program?
>
> THE COURT: I don't know what JRS would recommend until they accept you and meet with you and come up with a plan.
>
> THE DEFENDANT: I don't want to go to another program. So no.
>
> . . .
>
> THE COURT: All right. I'm not going to refer her to JRS. She's not going to cooperate with it. Her attitude

continues to be terrible. She believes she should be able to dictate to me what she needs and what she'll do or not do and I won't accept that.

. . .

THE COURT: Please assume that I've read both presentence reports and the Behavior Clinic evaluation because I have. I'm aware that she has mental health needs. I cannot force her to receive treatment for them.

. . .

THE COURT: She only wants [treatment] on her terms and I can't promise her that. I won't waste resources sending her to JRS with the anticipation they are going to recommend a dual diagnosis treatment program which she told me she doesn't think will do any good and hasn't done any good in the past and she won't do. Is that right?

THE DEFENDANT: Yes.

N.T., 6/28/16, at 3-5, 13, 16.

Casper further argues that the trial court failed to consider key mitigating evidence, such as her mental health treatment and medication, employment history, and family support. The record, however, belies her claims. At the revocation hearing, trial court stated, "I'm aware that she has mental health needs. I cannot force her to receive treatment for them." ***Id.*** at 16. The trial court gave Casper every opportunity to accept treatment, which she repeatedly declined. Further, the following exchange occurred:

THE COURT: We're not talking about alternative housing. What we're talking about is a program through JRS.

THE DEFENDANT: I don't understand what that means. What's the difference?

THE COURT: There are a number of programs such as Pyramid, private programs that JRS may recommend for you.

THE DEFENDANT: They are all rehab and I don't have a drug problem.

THE COURT: Let's just go forward. She doesn't have a drug problem in her estimation. She's declining services. What am I going to do?

. . .

THE COURT: Let me read from the Behavior Clinic evaluation which is based on her report. [Casper] reported that she started using marijuana at age 13, alcohol at age 14, opiates at age 15. She used marijuana daily, and alcohol and opiates occasionally. The last use of marijuana and opiates was on the date of the arrest and the use of alcohol probably a few days before that. This is a person who by all data reported would be considered high risk for drug dependence. And the Behavior Clinic, in fact, indicates []cannabis use disorder in remission, secondary to controlled environment. Opioid use disorder in remission, secondary to controlled environment.

. . .

THE COURT: . . . So I'm not going to play any games here, Ms. Casper. You seem to want to speak for yourself. Tell me what you want me to do.

THE DEFENDANT: I don't know.

THE COURT: You've heard your options. Consider a JRS plan that will likely include an inpatient treatment somewhere or I have a presentence report and I'm prepared to resentence you here on both cases. It's up to you.

THE DEFENDANT: I guess I'll do the JRS.

THE COURT: What I'm telling you is assume the worst. It's likely to be an inpatient treatment program. A dual diagnosis inpatient treatment program. If you're unwilling to do that and seriously do that, then tell me that now because there is no point in wasting our judicial resources.

- 8 -

I'm encouraging you to do it. I've already done everything I can do short of that for you.

THE DEFENDANT: I guess I don't have a choice.

THE COURT: You have a choice.

THE DEFENDANT: I mean, I would rather do that than do 10 years. So I guess I'm going to have to do that even though it's obviously not beneficial to me whatsoever.

*Id.* at 7-9, 12-13. Additionally, the record reflects that the trial court was aware of and considered Casper's family support, *see id.* at 10-11, and had the benefit of two pre-sentence reports, *see Devers*, 546 A.2d at 18.

Finally, we disagree with Casper's contention that the trial court did not consider the protection of the public, the gravity of the offense, and her rehabilitative needs. The trial court stated that Casper continuously violated her probation, refused every opportunity given to receive treatment, and that "[w]ithout JRS, I don't feel that I can continue to have probation supervise her in the community." N.T., 6/28/16, at 3. Further, as discussed above, the trial court thoroughly considered her rehabilitative needs.

A trial court is "in the best position to evaluate [an a]ppellant's character and . . . defiance or indifference." *Malovich*, 903 A.2d at 1254. Given the trial court findings regarding Casper's defiant attitude, her repeated violations of probation, and her unwillingness to participate in rehabilitation treatment, we cannot conclude that her sentence was manifestly unreasonable. *See id.*

Because the record shows that the sentence imposed was essential to vindicate the authority of the court under 42 Pa.C.S. § 9771(c)(3), and the trial court fully stated its reasons on the record, we conclude it did not abuse its discretion in imposing its sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/9/2017