J-S02037-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES EDWARD NOTTINGHAM, | : | |
| | : | |
| Appellant | : | No. 1645 MDA 2018 |

Appeal from the Judgment of Sentence Entered June 26, 2018
in the Court of Common Pleas of Lycoming County
Criminal Division at No(s):  CP-41-CR-0001870-2017

BEFORE:  BENDER, P.J.E., KING, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED MARCH 24, 2020**

James Edward Nottingham ("Nottingham") appeals from the judgment of sentence imposed following his conviction for perjury.[1]  Additionally, counsel for Nottingham has filed a Petition to Withdraw from representation and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  We grant counsel's Petition to Withdraw, and affirm Nottingham's judgment of sentence.

This appeal arises from a complicated procedural history.  Nottingham was originally arrested in July 2015, following an incident in which Nottingham was accused of threatening his then-girlfriend, her daughter, and several of her family members; preventing her from leaving their home; assaulting them; damaging a vehicle; aiming a firearm in their direction; and, most relevantly to the instant appeal, possessing a firearm as a person not

---

[1] 18 Pa.C.S.A. § 4902.

permitted to do so. He was charged with a variety of offenses related to the incident; however, the persons not to possess firearms charge was severed for trial. At trial on the firearms offense (the "Possession Trial"), Nottingham testified that he believed he was lawfully able to possess a firearm. According to Nottingham, he had paid an attorney in Florida to expunge his record of his previous conviction that disqualified him from possessing a firearm. On November 1, 2016, Nottingham was convicted of persons not to possess, and he was sentenced to serve five to ten years in prison.[2]

Nottingham subsequently went to trial on the remaining offenses (the "Second Trial"). There, Nottingham testified specifically that he did not possess a firearm on the night of the incident. A jury found Nottingham guilty of unlawful restraint, endangering the welfare of a child, terroristic threats, possessing instruments of a crime, simple assault, and recklessly endangering another person. Nottingham was sentenced to serve an aggregate term of three to six years in prison, to be run consecutively to the persons not to possess conviction.

Immediately thereafter, Nottingham was charged with perjury, the sole conviction underlying the instant appeal, relating to his statements made under oath during the Possession Trial. At trial, the Commonwealth presented Nottingham's testimony from the Possession Trial, as well as Nottingham's

---

[2] Nottingham filed a direct appeal from his persons not to possess conviction following the Possession Trial, and this Court affirmed the judgment of sentence. *See Commonwealth v. Nottingham*, 193 A.3d 1064 (Pa. Super. 2018) (memorandum opinion).

testimony from the sentencing hearing following his conviction, where he testified that he laid the firearm down when he saw police officers approaching. Finally, the Commonwealth presented Nottingham's testimony from the Second Trial, where he denied possessing a firearm, as well as testimony from his probation officer. Nottingham was convicted, and was sentenced to serve twelve to sixty months in prison, consecutive to all sentences to be served for his other convictions.

Nottingham filed a post-sentence Motion on July 2, 2018, followed by a timely, *pro se*, Notice of Appeal. Three months later, Nottingham's counsel withdrew the Notice of Appeal because the post-sentence Motion was still pending before the trial court. Shortly thereafter, the trial court filed an Order denying Nottingham's post-sentence Motion.[3] Nottingham proceeded to file, *pro se*, the instant Notice of Appeal on October 1, 2018.[4]

_____

[3] Despite the docket revealing that the trial court filed an Order, dated September 11, 2018, regarding the post-sentence Motion, the certified record does not include the Order, and a copy of the Order was not included as an exhibit or attachment in any filings of record. However, the trial court's Pa.R.A.P. 1925(a) Opinion states that the post-sentence Motion was, in fact, denied by its September 11, 2018 Order. **See** Trial Court Opinion, 11/21/18, at 1.

[4] Following the filing of the Notice of Appeal, this Court entered a Rule to Show Cause, dated October 24, 2018, directing Nottingham to show cause as to why the instant appeal should not be quashed as premature. Nottingham filed an Answer, *pro se*. Nevertheless, this Court discharged the Rule to Show Cause on the basis of the trial court docket, and referred the issue to the merits panel.

Additionally, the trial court docket reveals an Order, dated September 17, 2018, permitting Nottingham's then-counsel to withdraw, and appointing Nottingham alternative counsel; however, the record does not reveal any indication that a hearing was held pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1988). As a result, this Court issued an Order, dated December 28, 2018, remanding the matter to the trial court to hold a *Grazier* hearing, and ordering the trial court to submit a supplemental record containing the September 11, 2018 Order denying Nottingham's post-sentence Motion. By Order dated January 18, 2019, the trial court indicated that it convened for a *Grazier* hearing, determined that Nottingham did not wish to waive his right to counsel, and forwarded a supplemental record to this Court for our appellate review.[5]

On August 9, 2019, Nottingham's counsel filed a court-ordered Concise Statement of Matters Complained of on Appeal. On September 13, 2019, the trial court determined that counsel had abandoned Nottingham, and appointed new counsel to represent him in his appeal. On November 12, 2019, Nottingham's new Counsel filed a Motion to Withdraw from representation, and an accompanying brief pursuant to *Anders* and *Santiago*.

---

[5] We note that, in the record our December 28, 2018 Order instructed the trial court to include a copy of the September 11, 2018 Order denying Nottingham's post-trial Motion; the trial court failed to do so. Because the failure to include a copy of the Order does not meaningfully impede our appellate review, we will review Nottingham's claims on the merits.

In the ***Anders*** Brief, Counsel presents the following issues for our review:

I.      Whether an application to withdraw as counsel should be granted[,] where counsel has investigated the possible grounds for appeal and finds the appeal frivolous[?]

II.     Whether the trial court erred by imposing a state sentence consecutive to [Nottingham's] other state sentences[?]

III.    Whether the verdict was against the weight of the evidence[?]

IV.     Whether the trial court erred in failing to declare a mistrial[?]

***Anders*** Brief at 7.[6]

We may not address the merits of the issues Nottingham raises on appeal without first reviewing counsel's request to withdraw from representation. ***Commonwealth v. Rojas***, 874 A.2d 638, 639 (Pa. Super. 2005).

> Prior to withdrawing as counsel on a direct appeal under ***Anders***, counsel must file a brief that meets the requirements established by our Supreme Court in ***Santiago***. The brief must[]
>
> > (1) provide a summary of the procedural history and facts, with citations to the record;
> >
> > (2) refer to anything in the record that counsel believes arguably supports the appeal;
> >
> > (3) set forth counsel's conclusion that the appeal is frivolous; and

---

[6] Because Counsel's ability to withdraw is a threshold issue to our review, we will not directly address this question further.

> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.
>
> *Santiago*, 978 A.2d at 361. Counsel also must provide a copy of the *Anders* brief to [her] client. Attending the brief must be a letter that advises the client of his right to [] "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

*Commonwealth v. Orellana*, 86 A.3d 877, 879-80 (Pa. Super. 2014). After determining that counsel has satisfied the technical requirements of *Anders* and *Santiago*, this Court must then "conduct a simple review of the record to ascertain if there appear on its face to be any arguably meritorious issues that counsel, intentionally or not, missed or misstated." *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*).

Here, counsel's Motion to Withdraw states that she has made a conscientious examination of the record and believes that Nottingham's appeal is frivolous. The Petition states that counsel informed Nottingham of her intention to withdraw, provided Nottingham with a copy of the Petition and the *Anders* Brief, and advised him of his right to retain new counsel, or to proceed *pro se* to raise any points he believes are worthy of this Court's consideration.[7] Finally, counsel's *Anders* Brief substantially complies with the

---

[7] We note that Nottingham proceeded to file several *pro se* responses to Counsel's *Anders* Brief, which were submitted for this Court's consideration.

requirements in **Santiago**. Accordingly, we next conduct a review of the issues raised by Nottingham, and of the record, to ensure that no issues of arguable merit have been missed or misstated. **See id.**

Nottingham first challenges the discretionary aspects of his sentence. He argues that the trial court, in imposing its sentence of twelve to sixty months in prison, to be served consecutively with his pre-existing sentences, failed to appropriately consider all of the relevant factors and circumstances. **Anders** Brief at 17. Specifically, he argues that the court should have considered that he was serving another prison sentence at the time the instant sentence was imposed, and that the perjury case arose from the same proceedings and circumstances that led to his other sentence. **Id.** In support, Nottingham argues that the Commonwealth offered him a concurrent sentence, rather than the consecutive sentence that the trial court imposed. **Id.**

We approach Nottingham's arguments mindful that the right to appeal a challenge to the discretionary aspects of a sentence is not absolute. **Commonwealth v. Williams**, 787 A.2d 1085, 1087 (Pa. Super. 2001).

> [T]o reach the merits of a discretionary sentencing issue, we must determine: (1) whether the appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **See** Pa.R.Crim.P. 720; (3) whether the appellant's brief has a fatal defect, [**s**]**ee** Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is inappropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* at 1087-88 (citing **Commonwealth v. Petaccio**, 764 A.2d 582 (Pa. Super. 2000)).

Nottingham's argument, in short, is an excessiveness claim. At the outset, we observe that Nottingham's brief appears to substantially comply with the above requirements.[8] As a result, our review turns to whether Nottingham has raised a substantial question.

A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. **Commonwealth v. Mastromarino**, 2 A.3d 581, 587 (Pa. Super. 2010). Rather, the imposition of consecutive rather than concurrent sentences will present a substantial question in only "the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." **Commonwealth v. Lamonda**, 52 A.3d 365, 372 (Pa. Super. 2012). However, "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." **Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa. Super. 2014). Additionally:

---

[8] We note that Nottingham failed to include a separate Pa.R.A.P. 2119(f) statement in his **Anders** brief. While ordinarily, a Rule 2119(f) statement is a prerequisite for our review, this Court has previously reviewed the underlying matter where counsel files an **Anders** brief without a separate Rule 2119(f) statement. **See Commonwealth v. Ziegler**, 112 A.3d 656, 661 (Pa. Super. 2015). As a result, we do not consider counsel's failure to include a Rule 2119(f) statement in the **Anders** brief as precluding our review of whether Nottingham's issue is frivolous.

In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

***Commonwealth v. Dodge***, 77 A.3d 1263, 1270 (Pa. Super. 2013).

Based on our review, we conclude that Nottingham's challenge to the imposition of consecutive sentences as excessive, together with his claim that the trial court failed to consider the mitigating factors of his current service of sentence, the circumstances from which this case arose, and the Commonwealth's offer of a concurrent sentence, presents a substantial question. As a result, we grant Nottingham's petition for allowance of appeal and address the merits of his claim.

Our standard of review is well settled:

[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

***Commonwealth v. Cunningham***, 805 A.2d 566, 575 (Pa. Super. 2002) (citations omitted). Additionally, our Supreme Court has stated:

[w]here pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging

- 9 -

in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be determined that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion.

*Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).

At sentencing, the trial court reviewed Nottingham's existing sentence, as well as his pre-sentence investigation report. *See* N.T., 6/26/18, at 2-8. Nottingham testified under oath at the sentencing hearing, where he brought to the trial court's attention, at length, many of the same issues of fact—both related to the instant perjury conviction and the prior firearms conviction— and repeatedly professed his innocence. *Id.* at 9-16. Nottingham's counsel specifically requested that the trial court impose a concurrent sentence, given the circumstances and the fact that Nottingham was already serving his sentence for the firearms conviction. *Id.* at 14-15. The Commonwealth requested a term of 18 to 60 months in prison, to be run consecutive. *Id.* at 17-18. Finally, the trial court fashioned its sentence, and reasoned as follows:

Mr. Nottingham, since I was part of your earlier sentence, which was just recently affirmed by the Superior Court, I'm familiar with the circumstances of the underlying case. It's never a good thing when perjury charges have to be filed against an individual because what that's alleging is that you're lying in a material portion of a charge which was filed against you, which is absolutely your right to go to trial, absolutely your right to go to trial on the other charges which were filed against you. I disagree with the Commonwealth in the length of the sentence, but I also disagree with your attorney because this is a crime that's obstruction of the administration of justice type crime. To sentence you

- 10 -

concurrently would send the wrong message to the universe that it's okay to lie under oath. The jurors found that you lied under oath.

\*\*\*

And that's absolutely your right to believe [that Nottingham did not lie], but I'm basing what I'm doing on the results of the jury that had the opportunity to observe you in open court. This is not a conversation, Mr. Nottingham.

\*\*\*

So what I'm going to do is I'm going to sentence you to a 12 to 60 month sentence. It's going to run consecutive to the sentences that you're currently serving[.]

*Id.* at 18-19.

We conclude that the trial court ably explained its decision for imposing Nottingham's consecutive sentences, personally recalled Nottingham's earlier trials and the circumstances surrounding his testimony, and took great time and effort to consider Nottingham's testimony at sentencing and to explain to Nottingham both the legal bases for the trial court's rulings, as well as the rules of criminal and appellate procedure. Thus, Nottingham's claim that the court failed to consider all of the relevant factors is meritless. The trial court was free to impose a consecutive sentence for perjuring himself as he mounted his defense in his earlier trials, and we see no abuse of discretion in the trial court's imposition of sentence.

Next, Nottingham argues that his guilty verdict for perjury was against the weight of the evidence. He asserts that the trial court could not have convicted him of perjury because the Commonwealth failed to prove beyond

a reasonable doubt that Nottingham knowingly made false statements regarding his possession of the firearm. *Anders* Brief at 18.

Though Nottingham's argument appears on its face to be regarding the weight of the evidence, it appears to actually be a sufficiency claim.

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (explaining the distinction between a sufficiency of the evidence claim and a weight of the evidence claim) (citations omitted). In reviewing a sufficiency challenge, a court determines whether the evidence, viewed in the light most favorable to the verdict winner, is sufficient to enable the fact-finder to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Jackson*, 924 A.2d 618, 620 (Pa. 2007).

The Crimes Code defines perjury, in pertinent part, as follows:

> **(a) Offense defined.**--A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true.

> **(b) Materiality.**--Falsification is material, regardless of the admissibility of the statement under rules of evidence, if it could

have affected the course or outcome of the proceeding. It is no defense that the declarant mistakenly believed the falsification to be immaterial. Whether a falsification is material in a given factual situation is a question of law.

\*\*\*

**(f) Corroboration.**--In any prosecution under this section, except under subsection (e) of this section, falsity of a statement may not be established by the uncorroborated testimony of a single witness.

18 Pa.C.S.A. § 4902.

The crime of perjury is not synonymous with "false testimony." In order to constitute the crime of perjury several elements must be present, among which is the requirement that the false testimony must have been material to the proceeding at which it was made. The issue as to whether false testimony is material to the proceeding is a question of law. A false statement, made under oath, is material if it could have affected the course or outcome of the proceeding. Materiality is to be determined as of the time that the false statement was made. Furthermore, the test of the materiality of a false statement is whether it can influence a fact-finder, not whether it does. The fact that the false testimony was unnecessary to accomplish the end in view will not render it immaterial.

*Commonwealth v. Lafferty*, 419 A.2d 518, 521-22 (Pa. Super. 1980) (citations omitted; paragraphs combined; some quotations omitted). Accordingly, the elements of perjury are established if: (1) in an official proceeding; (2) under oath or affirmation to tell the truth; (3) the defendant made a false statement knowing it to be false; and (4) the statement was material to the matter then at issue. *Id.*

Upon our review of the record, we conclude that there was sufficient evidence to demonstrate that Nottingham knowingly made false statements under oath; the statements were material; and the statements were

corroborated. Nottingham argues that, despite his conflicting testimony, his denial that he possessed the firearm at trial was based on his belief that the specific firearm placed into evidence was not the same firearm that he possessed. **Anders** Brief at 20. Nottingham testified during the Possession Trial that he had taken possession of the firearm, and indicated that his possession of the firearm took place after he believed he had paid an attorney in Florida to expunge his record. N.T., 6/8/18, at 33. Nottingham also testified at his sentencing hearing that he did, in fact, possess the firearm. **Id.** at 34-35. During the perjury trial, Nottingham he denied possessing the firearm on the night of the incident, denied that he ever testified to possession of the firearm, and argued that the firearm submitted into evidence and shown in photographs taken at the scene was not the same firearm. **Id.** at 37-38, 60-61. Finally, Nottingham's probation officer testified that Nottingham had made statements indicating that he had possessed the firearm. **Id.** at 54-56.

Nottingham's statements at issue were clearly made during an official proceeding and were made under oath. Despite Nottingham's statements to the contrary, we are compelled to determine that Nottingham did, in fact, possess the firearm, as he was convicted of persons not to possess and his conviction was upheld by this court on direct appeal. **See Nottingham**, **supra**. Nottingham knew his statements were false, despite his current contention that the specific firearm depicted in evidence photographs was not his. Finally, Nottingham's statements that he did not possess the firearm were plainly material to the matter at issue of determining his guilt of being a person

- 14 -

not permitted to possess firearms. As a result, viewing the evidence in the light most favorable to the Commonwealth, the evidence presented was sufficient to establish that the elements of perjury were satisfied and that Nottingham made false, material statements that he knew to be false, under oath, during an official proceeding. *See Lafferty*, *supra*.

Finally, Nottingham argues that the trial court erred in failing to declare a mistrial. *Anders* Brief at 21. At sentencing, Nottingham requested a mistrial when he was afforded the opportunity to make a statement prior to the trial court imposing its sentence. *Id.* He argued three factors as the bases for the mistrial: the evidence presented against him was tampered with; his attorneys were uncooperative with his strategic preferences at trial; and the trial court improperly allowed jurors to see him in ankle restraints as the jurors were dismissed to deliberate. *Id.* at 21-22; *see also* N.T., 6/26/18, at 9-13.

Nottingham, notably, did not request a mistrial at any point until he appeared at his sentencing hearing, even though Nottingham claimed that he was aware of the issue during the trial. **See** N.T., 6/26/18, at 13. Because Nottingham did not properly preserve any issue surrounding the trial court's procedure during the dismissal of the jury for deliberations, we are compelled to find that his argument is waived. *See Commonwealth v. Rossier*, 135 A.3d 1077, 1086 (Pa. Super. 2016) (*en banc*) (holding that, in order to provide trial courts with an opportunity to correct errors at the time they were made, one must object to errors, improprieties, or irregularities at the earliest

possible stage of the criminal adjudicatory process); ***see also Commonwealth v. Clair***, 326 A.2d 272, 273 (Pa. 1974) (stating that the defense cannot, without first challenging at trial and preserving on appeal, complain of trial errors following a guilty verdict).[9]

In the final stage of our appellate review, this Court must undertake a review of the record to determine whether any additional non-frivolous issues exist. ***Dempster***, 187 A.3d at 272. We have reviewed the record in this case, including Nottingham's voluminous *pro se* correspondence both with this Court and the trial court. In Nottingham's most recent "Motion for Summary Judgment," filed with this Court in response to counsel's ***Anders*** brief, he brings to our attention a variety of issues related to both his perjury conviction and the previous convictions related to the Possession Trial and the Second Trial.

Specifically, Nottingham argues—as he has done consistently throughout the criminal proceedings following his arrest—that the rifle that was depicted in photographs taken at the scene was not placed by him; the crime scene was tampered with by police officers; his attorney and various other actors of the justice system are acting in concert against him; and that

---

[9] We note that the basis for Nottingham's motion for a mistrial at his sentencing appears to be largely based on evidentiary claims that he has repeatedly raised and which the trial court rejected, ***see Nottingham***, ***supra***. Additionally, there appears to be no support in the record for his new claim regarding the trial court's conduct in dismissing the jurors. A petition for relief under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546, rather than a motion for a mistrial, would be the appropriate venue for Nottingham to pursue his claims regarding ineffective assistance of counsel.

he is entitled to relief under various provisions of the Pennsylvania and United States Constitutions. Appellant's Motion for Summary Judgment, 11/21/19, at 1-6. Our review of the issues raised by Nottingham discloses no other "arguably meritorious issues that counsel, intentionally or not, missed or misstated." **Dempster**, 187 A.3d at 272. As such, we grant counsel's Petition to Withdraw, and affirm the judgment of sentence.

Petition to Withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/24/2020