J-S06038-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEKITA P. MCDUFFIE | : | |
| | : | |
| Appellant | : | No. 1736 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 11, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008550-2019

BEFORE: DUBOW, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED MARCH 8, 2024**

Lekita P. McDuffie ("McDuffie") appeals *nunc pro tunc* from the judgment of sentence imposed after she pled guilty to third-degree murder, conspiracy, and possession of an instrument of crime.[1]  We affirm.

The trial court described the facts underlying McDuffie's guilty plea as follows:

> Sometime before the [F]all of 2018, [McDuffie], dated a man named Max Elmine.  Elmine, who was wanted in connection [with the murder] of Nasim Alameen, fled to Haiti in the [F]all of 2018.  After Alameen's murder, [McDuffie's] home was "shot up" on three separate occasions and [she] believed it was in retaliation against Elmine for Alameen's murder.  [McDuffie] texted Elmine, blaming him for the house shootings and telling him that she was going to have to protect her family since he was no longer there to do so.  [McDuffie] also began texting her cousins, co-defendants[,] Tyrone McDuffie [("Tyrone")] and Dolores McDuffie [("Dolores")], about [McDuffie's] belief that the house shootings were retaliatory and about planning her own retaliation for the

---

[1] 18 Pa.C.S.A. §§ 2502(c), 903, and 907(b).

shootings. [McDuffie] and Dolores texted about how they believed the person responsible was someone by the name "Dino" and discussed getting Dino's address in order to retaliate. [McDuffie] texted Tyrone to be "on standby" to retaliate against "Dino."

In early October 2018, Julien Johnson [("Johnson")], who went by the nickname "Dino," began receiving threatening messages on Instagram from what he considered a fake Instagram account. These messages consisted of death threats against Johnson and his family. Johnson believed he was receiving these threats in retaliation for the shootings of [McDuffie's] home, which he had heard about in the neighborhood. Investigation revealed that the messages to Johnson through the Instagram account had been sent by [McDuffie].

In the early morning hours of October 9, 2018, Johnson was parked in the rear driveway of 5223 Westford Road. In the car with him was his girlfriend, Andrea Meyers [("Meyers")], as well as Kevin Ulysses [("Ulysses")] and Duke Jules [("Jules")]. Video surveillance of the area shows two vehicles drive past the rear driveway before circling the block. The video then shows two individuals approach the car that Johnson, Meyers, Ulysses, and Jules were in from the direction of the two cars previously seen driving past the rear driveway. The two individuals began firing at the car. Meyers was struck by the gunfire and killed. The other three occupants of the car, including Johnson, were not injured. The two shooters then ran towards the area where the vehicles were previously seen circling the block and drove [a]way. [McDuffie's] cellphone records placed her directly in the area of the murder at the time it occurred. Immediately following the murder, [McDuffie] went to 4842 North Hope Street, which was the home of her cousins[,] Tyrone and Dolores. All of this established that [McDuffie] enlisted the aid of her codefendants to shoot Johnson, and that Meyers, who had the misfortune of being in a car with Johnson at the time of the attack, was killed as a result.

Trial Court Opinion, 7/24/23, at 2-4 (footnotes, records citations, and unnecessary capitalization omitted).

McDuffie entered an open guilty plea to the above-listed crimes in December 2021. Following receipt of a pre-sentence investigation report ("PSI") and a mental health evaluation, the trial court sentenced McDuffie to an aggregate term of twenty-three to forty-six years in prison.

McDuffie filed a timely post-sentence motion for reconsideration of sentence and to withdraw her guilty plea. That same day, trial counsel filed a motion to withdraw. The trial court granted trial counsel's motion to withdraw and appointed new counsel. Subsequently, McDuffie withdrew her motion to withdraw her guilty plea and the trial court denied her motion for reconsideration of sentence. McDuffie did not file a direct appeal.

In March 2022, through counsel, McDuffie filed a petition seeking reinstatement of her direct appeal rights. The court granted the petition, and the instant, timely appeal followed.[2]

McDuffie raises the following issue:

> Did the sentencing court abuse its discretion in sentencing [McDuffie] to an aggregate sentence of [twenty-three to forty-six] years of incarceration with two [eleven and one-half to twenty-three] year consecutive sentences when [McDuffie] had no other prior convictions, when there was a singular focus on retribution by the sentencing court rather than also considering [McDuffie's] potential for rehabilitation, when [McDuffie] presented mitigation and accepted responsibility, and when [McDuffie] was not the actual shooter and faced significant prior violence from the intended target of the underlying shooting?

McDuffie's Brief at 4.

---

[2] McDuffie and the trial court complied with Pa.R.A.P. 1925.

In her only issue, McDuffie challenges the discretionary aspects of her sentence. McDuffie's Brief at 8-14. There is no absolute right to challenge the discretionary aspects of a sentence. *See Commonwealth v. Hill*, 66 A.3d 359, 363 (Pa. Super. 2013). Before reaching the merits of a discretionary sentencing claim, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved h[er] issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Edwards*, 71 A.3d 323, 329–30 (Pa. Super. 2013) (citation omitted).

McDuffie preserved her sentencing issues in a post-sentence motion, filed a timely appeal, and included in her brief a statement of the reasons relied upon for allowance of appeal. Therefore, we consider whether McDuffie has raised a substantial question.

McDuffie contends the sentence was excessive, and the trial court: (1) failed to properly consider mitigating factors; and (2) only contemplated the need for retribution.[3] McDuffie's Brief at 9-11. These claims raise a

---

[3] McDuffie also challenges the imposition of consecutive sentences. However, it is settled the trial court had discretion to impose consecutive sentences. *Commonwealth v. Radecki*, 180 A.3d 441, 470 (Pa. Super. 2018) (stating that "Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences," and recognizing the imposition of consecutive sentences ordinarily does not raise a substantial question (citation omitted)).

substantial question. *See Commonwealth v. Summers*, 245 A.3d 686, 692 (Pa. Super. 2021) (concluding a claim that the sentence was harsh and excessive and trial court failed to consider mitigating factors raises a substantial question); *Commonwealth v. Allen*, 24 A.3d 1058, 1064-65 (Pa. Super. 2011) (stating that "a claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question." (citation omitted)).

We next consider the merits of McDuffie's claim mindful of the following:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015) (citation omitted).

When a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. *See Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010). We may only vacate a sentence within the guidelines where the sentence is "clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2). In addition, when the trial court has had the benefit of a PSI, we "presume that the sentencing judge was aware of relevant information regarding the defendant's character and

weighed those considerations along with mitigating statutory factors."
***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988).

Here, the trial court considered the PSI, the mental health evaluation, McDuffie's lack of a prior criminal history, letters from her friends and family, the sentencing guidelines, the Commonwealth's sentencing memorandum, and testimony from a witness on behalf of the Commonwealth. ***See*** N.T., 3/11/22, at 36-37. The trial court discussed the sentencing factors and McDuffie's rehabilitative needs. ***See id***. at 37-40. While acknowledging McDuffie was not the shooter, the court noted McDuffie "set this entire thing in motion. She was the ringleader[.]" ***Id***. at 38. The court commented on the "series of terrible events that provoked McDuffie," but stated, "[t]his was a planned assassination of somebody" based upon McDuffie's unsupported belief Johnson was involved with the shootings at her home. ***Id***. at 39.

The court further explained:

> Here, in fashioning an appropriate sentence, the court explicitly considered everything presented during the course of the case, including the presentence report, all materials submitted on behalf of [McDuffie], including several letters of support, and the Commonwealth's sentencing memorandum. The court considered the need for protection of the public, the gravity of the offense, and its impact on the victim and the community. In addition, the court delineated and weighed both the mitigating and aggravating factors in the case. While [McDuffie] argues that the court did not consider the mitigation she presented or the fact that she accepted responsibility, the court explicitly considered several mitigating factors including [McDuffie's] acceptance of responsibility, remorse, and the provocation she experienced based on the shootings of her home. Furthermore, the court explicitly took into account [McDuffie's] rehabilitative needs, her family and community support, and her prior record score of zero.

Trial Court Opinion, 7/24/23, at 5-6 (record citations and unnecessary capitalization omitted).

After careful review, we conclude McDuffie's standard-range sentences were neither excessive nor clearly unreasonable and discern no abuse of discretion in sentencing. *See*, *e.g*., *Moury*, 992 A.2d at 171 (holding a sentence within the standard range of the guidelines is viewed as appropriate, and the sentence is not unreasonable where the trial court had the benefit of a PSI and imposed a standard range sentence); *see also Commonwealth v. Raven*, 97 A.3d 1244, 1254-55 (Pa. Super. 2014) (holding defendant's standard-range sentences were neither unreasonable nor excessive where the "record reflects that the [sentencing] court carefully considered all of the evidence presented at the sentencing hearing").

As we discern no abuse of discretion by the trial court, McDuffie's sentencing issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/8/2024