J-S03022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
OMAR HILL :
:
Appellant : No. 636 WDA 2024

Appeal from the Judgment of Sentence Entered April 30, 2024
In the Court of Common Pleas of Erie County
Criminal Division at No(s):  CP-25-CR-0000591-2023

BEFORE:  KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED: MARCH 31, 2025**

Omar Hill ("Hill") appeals from the judgment of sentence imposed following his jury convictions of one count each of terroristic threats, simple assault, recklessly endangering another person, harassment, and aggravated assault.[1]  For the reasons discussed below, we affirm.

The trial court detailed the underlying facts and procedural history as follows:

[In late 2021], Rebecca Kuhn [("the victim")] . . . met [Hill] when [Hill] approached her at a bar when she was performing with her band.  [Hill] told the victim that [s]he should "call him sometime." The victim did not take him up on that offer, nor did she accept his subsequent friend request on Facebook.  The victim did not have any more contact with [Hill] until January 12, 2023.

[That day], [the victim] left her house at approximately 2:30 a.m. to pick up friends who had been out drinking.  One

---

[1] **See** 18 Pa.C.S.A. §§ 2706(a)(1), 2701(a)(1), 2705, 2709(a)(1), 2702(a)(4).

friend . . . was at [Hill's] "studio." [Hill] operated a recording studio out of a business office and would often host after hour parties. Prior to getting [her friend, the victim] picked up Wesley Buettner [("Buettner")] who had been drinking at a friend's house. When [the victim] arrived at [Hill's] studio . . . . [Hill] approached [her] and handed her his business card and told her to "call him sometime." . . . When [Hill] walked away, [the victim] ripped the business card in half and shoved it in her purse. [The victim] became aware of [Hill's] presence behind her. [The victim] described [Hill's] body language as "overpowering" as he leaned into her ear and said[,] "Did you just rip my card, bitch[?]"

Alarmed and alerted to [Hill's] anger, [the victim] began apologizing [] to deescalate the situation. Before [the victim] could finish her apology, [Hill] threw a drink in her face and then hit her on her right side of the face under her eye while he was still holding the glass. [Hill] then proceeded to forcefully shove [the victim] to the ground. . . .

As [] Buettner help[ed the victim] to stand up, [Hill] began "aggressively" walking towards [her]. [The victim] testified that she was afraid and threw a pool table rack in [Hill's] direction[] but missed [Hill] and hit the wall. This only further angered [Hill] and he reached into his pants, pulled out a handgun, and pointed it at [the victim's] face. [The victim] screamed and told [Hill] that she wanted to leave. As [the victim] turned to leave, [Hill] violently struck [her] in the back of the head with the bottom of the gun. As [the victim] and [] Buettner attempted to run out of the building, [Hill] "chased" them with the gun and would not let them leave. [Hill][] again[] aimed the gun at [the victim's] face so that she was "looking at the barrel of the gun". . . . [After the victim was able to escape and drive away from the building she realized] she was bleeding profusely from a wound on the back of her head. [The victim] pulled into a gas station parking lot and called 911. [The victim] explained to the responding officer, Officer Benjamin Steiner [("Officer Steiner")], that [Hill] had injured her [and gave] him [Hill's] ripped business card. Officer Steiner testified that [the victim] appeared hysterical when he arrived on scene. [The victim's] wound required her to be taken by ambulance to a local hospital. At the hospital, [the victim's] injuries, which included bruising and a head wound, were photographed. [The victim's] head wound [] required nine staples and a CT scan.

Trial Court Opinion, 9/12/24, at 2-4 (record citations omitted).

In March 2024, a jury convicted Hill of the above-mentioned charges.
Following receipt of a pre-sentence investigation report ("PSI"), in April 2024,
the trial court sentenced Hill to a standard-range sentence of eleven and one-
half to twenty-three months of imprisonment to be followed by a term of
probation. Hill filed a post-sentence motion, which the trial court denied. This
timely appeal followed.[2]

Hill raises two issues for our review:

[Was t]he verdict in this case against the weight of the evidence
since the victim initiated the altercation and there was testimony
that [] Hill did not have a gun[?]

[Was t]he sentence in this case [] manifestly excessive and clearly
unconscionable since [Hill] did not have a prior criminal record,
had numerous letters of support regarding his character, and had
evidence of good works [] do[ne] in the community[?]

Hill's Brief at 2 (issues reformulated into questions).[3]

In his first issue, Hill challenges the weight of the evidence. **See** Hill's
Brief at 9-12. Our standard of review is settled:

The finder of fact is the exclusive judge of the weight of the
evidence as the fact finder is free to believe all, part, or none of
the evidence presented and determines the credibility of the
witnesses.

As an appellate court, we cannot substitute our judgment
for that of the finder of fact. Therefore, we will reverse a jury's

---

[2] Hill and the trial court complied with Pa.R.A.P. 1925.

[3] We note with disapproval the Commonwealth did not file a brief in this
matter.

verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of [J]ustice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and internal quotation marks omitted).

Hill argues the weight of the evidence is insufficient to support the verdict because Hill's and his witnesses' testimony conflicted with that of the Commonwealth. *See* Hill's Brief at 10-12.

The trial court disagreed, explaining:

The evidence in this case was presented to the jury over the course of a three[-]day . . . trial. The jury heard testimony from numerous witnesses, including the victim, the victim's friend, the [police], [Hill's] best friend, and [Hill]. The jury had an opportunity to fairly assess their credibility. The victim testified that after she ripped [Hill's] business card[,] she placed it in her purse. Officer Steiner then testified that when he met with the victim[,] she produced a ripped business card [to] identify who attacked her. Officer Steiner also observed the victim's injuries[,] which were consistent with a blow to the head by a gun. [Hill's] witness testified that [t]he victim ripped the card and threw it in [Hill's] face and left the card behind on the ground. Furthermore, the victim's testimony that she was hit in the face by [Hill] and then hit on the back of her head by [Hill] with a gun was corroborated by pictures of her injuries, which included nine staples to the back of her head.

- 4 -

[Hill] and his witness further testified that [the victim] arrived at the studio drunk. [The victim] testified that she was not drinking that night and was the designated driver for her friends. To add credibility to [the victim's] statement, Officer Steiner testified that he did not smell alcohol on [the victim's] breath, nor did he have any concern that she was under the influence. The jury in this matter had ample opportunity to consider the credibility and weight of each witness including both [the] victim and [Hill].

The evidence in this case is not unreliable and did not lead to a verdict based on pure conjecture. Therefore, premised on the above, the jury's verdict was not against the weight of the evidence and certainly does not shock [the trial court's] sense of justice. Therefore, the verdicts must stand.

Trial Court Opinion, 9/12/24, at 5-6 (citation and internal quotation marks omitted).

We discern no abuse of discretion by the trial court in reaching its determination that the verdict did not shock its conscience. The Commonwealth presented evidence to show Hill threatened, harassed, endangered, and assaulted the victim because she rejected his attentions. That the jury chose to believe her testimony and the corroborating evidence rather than credit Hill's self-serving testimony and the testimony of his friends was entirely within its province. Hill essentially requests we re-weigh the evidence and assess the credibility of the witnesses presented at trial. This we cannot do; the jury, as finder of fact, had the duty to determine the credibility of the witnesses and evidence presented at trial. *See Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (citation omitted) (stating that "[a]n appellate court cannot substitute its judgment for

that of the finder of fact"). The jury found the evidence demonstrated Hill committed the above-listed crimes and the trial court found the verdict did not shock its conscience. Accordingly, we decline to disturb the trial court's rejection of Hill's challenge to the weight of the evidence.

In his second and final issue, Hill challenges the discretionary aspects of his sentence. **See** Hill's Brief at 12-14. There is no absolute right to challenge the discretionary aspects of a sentence. **See Commonwealth v. Hill**, 66 A.3d 359, 363 (Pa. Super. 2013). Before reaching the merits of a discretionary sentencing claim, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

**Commonwealth v. Edwards**, 71 A.3d 323, 329–30 (Pa. Super. 2013) (citation omitted).

In his post-sentence motion, Hill preserved his claims he received an excessive sentence, and the court failed to consider mitigating factors. He filed a timely appeal and included in his brief a statement of the reasons relied upon for allowance of appeal. Therefore, we consider whether Hill has raised a substantial question.

Hill contends the sentence was excessive and the trial court failed to properly consider mitigating factors. **See** Hill's Brief at 12-14. This claim raises a substantial question. **See Commonwealth v. Summers**, 245 A.3d

- 6 -

686, 692 (Pa. Super. 2021) (concluding a claim that a sentence was harsh and excessive and trial court failed to consider mitigating factors raises a substantial question).

We next consider the merits of Hill's claim mindful of the following:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015) (citation omitted).

When a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. *See Commonwealth v. Walls*, 926 A.2d 957, 963 (Pa. 2007); *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010). We may only vacate a sentence within the guidelines where the sentence is "clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2). In addition, when the trial court has had the benefit of a PSI, we "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).

After careful review, we conclude Hill's standard-range sentence was neither excessive nor clearly unreasonable and discern no abuse of discretion

in sentencing. *See*, *e.g*., *Moury*, 992 A.2d at 171 (holding a sentence within the standard range of the guidelines is viewed as appropriate, and the sentence is not unreasonable where the trial court had the benefit of a PSI and imposed a standard-range sentence); *see also Commonwealth v. Raven*, 97 A.3d 1244, 1254-55 (Pa. Super. 2014) (holding standard-range sentences were neither unreasonable nor excessive where the "record reflects that the [sentencing] court carefully considered all of the evidence presented at the sentencing hearing").

The record demonstrates the trial court considered the PSI, the letters and testimony on behalf of Hill, the victim impact statements, and the sentencing guidelines. *See* N.T., 4/30/24, at 54-55. This is what the law requires. *See*, *e.g.*, *Commonwealth v. Hardy*, 939 A.2d 974, 980 (Pa. Super. 2007) (rejecting defendant's challenge to discretionary aspects of sentence and stating sentencing court is not required "to ignore context and instead review [the] charges in a vacuum, where only the name of the offense and corresponding standard range sentence is considered."). As we discern no abuse of discretion by the trial court, Hill's sentencing issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/31/2025