**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAMIYA T. BROWN | : | |
| | : | |
| Appellant | : | No. 2091 EDA 2024 |

Appeal from the Judgment of Sentence Entered June 27, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0000774-2020

BEFORE:  STABILE, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED AUGUST 5, 2025**

Samiya T. Brown ("Brown") appeals from the judgment of sentence, imposed following her open guilty plea to third-degree murder, endangering the welfare of a child ("EWOC"), and possession of an instrument of crime ("PIC").[1]  We affirm.

The trial court described the facts underlying Brown's guilty plea as follows:

On Wednesday, October 30, 2019, at approximately 4:30 p.m., police responded to a call for a person screaming at 1714 Folsom Street in Philadelphia, PA.  Upon arrival, officers met [Brown], who was running cold water over Z.S. (["the victim"]), who was four [] years old at the time.  [Brown] had been the custodial caregiver of [the victim] since birth.  [Brown] told police that [the victim] had fallen out of the second-floor window of the house, and [Brown] took [the victim] to the bathroom to care for her.  [Brown] reported that when she returned home and passed by the second floor, she noticed [the victim] playing with a cat in the

_____

[1] 18 Pa.C.S.A. §§ 2502(c), 4304(a)(1), and 907(a).

bedroom. [Brown] told police that she continued to the kitchen to make Sloppy Joes. While there, [Brown] heard the cat moaning and checked the rear of the property, and she saw [the victim] lying on the chairs in the backyard. When [Brown] picked up [the victim], she noticed her eyes rolling to the back of her head, a split lip, gashes to her head, and gushing blood.

At the time of police arrival, [the victim's] face had catastrophic injuries particularly to the lip and nose area. [The victim] was transported to the hospital; due to the severity of her condition, she was subsequently transported to the Children's Hospital of Philadelphia ("CHOP"). [Brown] admitted to CHOP hospital staff that she put homemade green stitches in [the victim's] scalp where two open wounds were present.

During [the victim's] examination at CHOP, the doctor found that her injuries were inconsistent with [Brown's] explanation to police. On October 31, 2019, [the victim's] biological mother, Jasmine Singleton ["Ms. Singleton"], was interviewed. She stated that, immediately after giving birth to [the victim], she gave temporary guardianship of the child to [Brown] while Ms. Singleton attempted to secure housing for herself. Ms. Singleton stated that, in 2017, [Brown] moved without giving her any information about the new residence. Ms. Singleton reported that she did not see her daughter again until [the victim] was in CHOP being treated for her injuries.

On November 3, 2019, [the victim] was pronounced dead. Dr. Julia De La Garza ["Dr. De La Garza"] of the Office of the Medical Examiner reported that [the victim] suffered from inflicted trauma to various parts of her body, and that her injuries were in different stages of healing. [The victim] had open wounds to her face and scalp, broken bones, and what appeared to be cigarette burns and large patch burns [caused by scalding water] to her left arm and thigh. Homemade stitches and various puncture wounds were found on [the victim's] body, and she was malnourished. Dr. De La Garza ruled that the immediate cause of death was complications including sepsis, due to blunt impact and thermal injuries. Dr. De La Garza ruled that the manner of death was homicide.

Trial Court Opinion, 10/4/24, at 1-3.

In return for the Commonwealth's withdrawing the charge of first-degree murder, Brown entered an open guilty plea to the above-listed crimes in May 2022. Following receipt of a pre-sentence investigation report ("PSI"), a mental health evaluation, and a psychosocial evaluation, the trial court sentenced Brown to a term of twenty-to-forty years in prison for third-degree murder, and a consecutive term of ten-to-twenty years' imprisonment for EWOC. The trial court did not impose any additional sentence for PIC. Thus, Brown's aggregate sentence was thirty-to-sixty years in prison.

Following the filing and denial of post-sentence motions, Brown filed a timely appeal challenging her sentence. In November 2023, this Court remanded the matter for resentencing, concluding the trial court had failed to acknowledge consideration of the PSI, discuss the sentencing guideline ranges, note it was sentencing Brown outside the guideline ranges, and put reasons on the record for its guidelines departure. *See Commonwealth v. Brown*, 2322 EDA 2022 (Pa. Super. Nov. 30, 2023) (unpublished judgment order at 4).

The trial court held a resentencing hearing in June 2024 and reimposed the same sentence. Following the receipt and denial of post-sentence motions,[2] Brown filed the instant, timely appeal.[3]

Brown raises the following issue:

Was the sentence for [EWOC] manifestly excessive and unreasonable because the trial court abused its discretion by (1) relying upon impermissible factors at sentencing and (2) failing to adequately weigh [Brown's] considerable mitigation and demonstrated capacity for rehabilitation?

Brown's Brief at 3.

In her only issue, Brown challenges the discretionary aspects of her sentence for EWOC.[4] *See* Brown's Brief at 17-31. There is no absolute right to challenge the discretionary aspects of a sentence. *See Commonwealth v. Hill*, 66 A.3d 359, 363 (Pa. Super. 2013). Before reaching the merits of a discretionary sentencing claim, we must determine:

(1) whether the appeal is timely; (2) whether Appellant preserved h[er] issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

_____

[2] The trial court accepted Brown's filing of *nunc pro tunc* post-sentence motions. *See* Trial Court Opinion, 10/4/24, at 5.

[3] Brown and the trial court complied with Pa.R.A.P. 1925.

[4] Brown does not challenge her guideline-range sentence for third-degree murder. *See* Brown's Brief at 17, n.2.

***Commonwealth v. Edwards***, 71 A.3d 323, 329–30 (Pa. Super. 2013) (citation omitted).

Brown preserved her sentencing issues in a post-sentence motion, filed a timely appeal, and included in her brief a statement of the reasons relied upon for allowance of appeal. Therefore, we consider whether Brown has raised a substantial question.

Brown contends the sentence for EWOC was excessive, and the trial court: (1) failed to properly consider mitigating factors; and (2) only improperly considered factors already accounted for by the heightened gradation of the offense and/or are not listed in the general guidelines. Brown's Brief at 17-31. These claims raise a substantial question. ***See Commonwealth v. Summers***, 245 A.3d 686, 692 (Pa. Super. 2021) (concluding a claim that the sentence was harsh and excessive and trial court failed to consider mitigating factors raises a substantial question); ***Commonwealth v. Allen***, 24 A.3d 1058, 1064-65 (Pa. Super. 2011) (stating that "a claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question." (citation omitted)).

We consider the merits of Brown's claim mindful of the following:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 731 (Pa. Super. 2015) (citation omitted). On appeal, "[w]e cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." ***Commonwealth v. Macias***, 968 A.2d 773, 778 (Pa. Super. 2009).

With respect to a sentence outside of the recommended guidelines:

> When evaluating a challenge to the discretionary aspects of sentence . . . it is important to remember that ***the sentencing guidelines are advisory in nature.  If the sentencing court deems it appropriate to sentence outside of the guidelines, it may do so as long as it offers reasons for this determination.*** [O]ur Supreme Court has indicated that ***if the sentencing court proffers reasons indicating that its decision to depart from the guidelines is not unreasonable***, we must affirm a sentence that falls outside those guidelines.
>
> * * * * *
>
> A sentencing court, therefore, in carrying out its duty to impose an individualized sentence, may depart from the guidelines when it properly identifies a particular "factual basis and specific reasons which compelled [it] to deviate from the guideline range."

***Commonwealth v. Shull***, 148 A.3d 820, 836 (Pa. Super. 2016) (citations omitted, some emphasis in original, some emphasis added).

When the trial court has the benefit of a PSI, we "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988).

Here, the trial court considered the PSI, the mental health evaluation, the psychosocial evaluation, the testimony of the sentencing witnesses, the sentencing exhibits, and the sentencing guidelines.[5] *See* N.T., 6/27/24, at 6, 19-21. However, the trial court explicitly acknowledged it was departing from the sentencing guidelines for EWOC and explained it did so because of the breadth of the injuries Brown inflicted on the victim, the fact Brown did not seek medical attention for the victim, Brown's status as the victim's guardian, Brown's failure to feed the victim, the difference between Brown's treatment of her biological children and the victim, and Brown's acknowledged ability to access medical treatment for her disabled biological daughter on a bi-weekly basis. *See id*. at 19-21. The trial court specifically found the upward departure justified because Brown, "acted with a wicked heart when she caused the death of this child[.]" *Id*. at 21.

We are not persuaded by Brown's argument that the trial judge relied on improper or impermissible factors when it juxtaposed the specific details of the extensive abuse and neglect of the victim with Brown's treatment of her biological children. A sentencing court is not limited to merely considering

---

[5] We note the mental health and psychosocial evaluations are not included in the certified record, but Brown appended copies of them to her brief. This Court has continually stated that copying material and attaching it to the brief does not make it a part of the certified record. *See, e.g.*, *Commonwealth v. Johnson*, 33 A.3d 122, 126 n.6 (Pa. Super. 2011); *In re M.T.*, 607 A.2d 271, 275 (Pa. Super. 1992). Therefore, this Court did not consider those documents.

the guideline ranges and offense grading and nothing else. **See Commonwealth v. Hardy**, 939 A.2d 974, 980 (Pa. Super. 2007) (stating sentencing court is not required "to ignore context and instead review [the] charges in a vacuum, where only the name of the offense and corresponding standard range sentence is considered."). Contrary to Brown's assertion, the trial court properly considered the disparity between her treatment of her biological child and the victim. In a published opinion, this Court rejected a mother's sufficiency challenge to her conviction for aggravated assault in the starvation death of her four-year-old son by considering extensive testimony concerning the mother's differing treatment of the victim as opposed to his siblings when it came to food, medical treatment, and living conditions. **See Commonwealth v. Thomas**, 867 A.2d 594, 597-600 (Pa. Super. 2005). We fail to see how evidence admissible to prove the charge at issue can be an improper factor in sentencing where a sentencing court is statutorily charged to have regard for "[t]he nature of and circumstances of the offense and the history and characteristics of the defendant." Pa.C.S.A. § 9781(d).

At the original sentencing hearing, the Commonwealth presented exhaustive, graphic, and detailed testimony by the medical examiner and photographs from the victim's autopsy. **See** N.T., 7/26/22, at 11-41; Commonwealth Exhibits, 7/26/22, at 1-7. This evidence showed the victim had been starved, tortured, and denied access to life-sustaining medical treatment over a lengthy period and further that Brown tried to escape

responsibility for her actions by lying to the police. ***See id***.; ***see*** Trial Court Opinion, 10/6/24, at 2. It was within the trial court's discretion to weigh this evidence against the mitigation evidence presented by Brown and determine that the record supported a statutory maximum sentence for EWOC. We have no basis to disturb this determination by re-weighing the evidence. ***See Macias***, 968 A.2d 773, 778

As we discern no abuse of discretion by the trial court, Brown's sentencing issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/5/2025